STATE of Wisconsin, Plaintiff-Appellant,

v.

Marcel KILLEBREW, Defendant-Respondent.†

Court of Appeals

*No. 81–1345–CR. Submitted on briefs March 2, 1982.—*
*Decided November 9, 1982.*
(Also reported in 327 N.W.2d 155.)

† Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Jeffrey M. Gabrysiak,* assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *John E. Tradewell,* assistant state public defender.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J.   The state appeals from an order dismissing a criminal complaint which charged the defendant with escape from the Wisconsin Correctional Camp System at Oregon contrary to sec. 946.42(3)(a), Stats.[1] The issue is whether conduct which violates both a state statute and a prison regulation may, consistent with the double jeopardy clauses of the United States and Wisconsin Constitutions, be the subject of both criminal prosecution and administrative disciplinary proceedings. We hold that they may and reverse.

The defendant was placed on three years' probation after his conviction of forgery and of driving a motor

---

[1] Section 946.42(3) Stats., provides in material part:

Any person in custody under any of the following circumstances who intentionally escapes from custody is guilty of a Class D felony;

(a) Sentenced to a state prison;

. . . .

vehicle without the owner's consent. His probation was revoked about a year later, and he began serving his sentences for those crimes at the state prison in Waupun. A few days after his arrival at Waupun he was transferred to the correctional camp at Oregon, a minimum security facility. About two weks later he allegedly left the camp without permission. He was apprehended in Madison sixteen days thereafter.

On his return to custody the defendant was charged with violating the prison administrative rule prohibiting escape.[2] He waived formal hearing on the charge and was found to have violated the rule in question by the institution adjustment committee. The committee ordered the defendant placed in "program segregation" for a maximum of 360 days, and a forfeiture of five days of the defendant's accumulated good time.

Under the prison rules then in force,[3] program segregation was a form of "segregated status" which could be imposed when, "in the opinion of the adjustment committee, the conduct of the resident has been such as to warrant extended segregation." Persons assigned to program segregation were entitled to a review of their status within nine days after the initial placement, and "at least once every 30 days thereafter until they are released

[2] The prohibition is now found in Wis. Admin. Code, sec. HSS 303.22, which provides in relevant part as follows:

(1) An inmate who does any of the following without permission and with the intent to escape is guilty of an offense:

(a) Leaves an institution;

. . . .

[3] The disciplinary provisions of the Division of Corrections Procedures Manual—which controls this appeal—have now been substantially codified in and superseded by Wis. Admin. Code, ch. HSS 303. Under present sec. HSS 303.68, both program segregation and loss of earned good time are classified as "major" penalties for violation of disciplinary rules. Minor penalties include reprimands, loss of recreation privileges, building confinement and room confinement, loss of a specific privilege, extra duty and restitution.

from program segregation." As a consequence of the required reviews, the defendant was returned to the general prison population after serving only thirty-five days in program segregation.

Subsequent to his release from program segregation, the defendant brought a motion to dismiss the pending criminal escape charged on double jeopardy grounds. The defendant argued before the trial court, as he argues here, that the imposition of both administrative and judicial sanctions for the same offense violates the double jeopardy clause of the fifth amendment to the United States Constitution, which is applicable to the states through the due process clause of the fourteenth amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969).[4] The trial court determined that the purpose of the administrative discipline was punitive, and thus that the state was constitutionally prohibited from instituting the present prosecution subjecting the defendant to additional punishment for his single act of escape.

The question before us is one of law. We therefore owe no deference to the trial court's determinations.[5] The question is also one of first impression in Wisconsin. The state notes that virtually all courts which have considered the issue have held that a criminal action for escape is not constitutionally precluded by prior administrative

---

[4] The fifth amendment to the United States Constitution provides in relevant part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The counterpart provision of the Wisconsin Constitution is "identical in scope and purpose." *Day v. State*, 76 Wis. 2d 588, 591, 251 N.W.2d 811, 812–13, *cert. denied*, 434 U.S. 848 (1977). Therefore, decisions of the United States Supreme Court govern, where applicable, the double jeopardy analysis under both constitutions. *State v. Rabe*, 96 Wis. 2d 48, 61 n. 7, 291 N.W.2d 809, 815–16 (1980).

[5] *See, e.g., First National Leasing Corp. v. Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977); *Bruner v. Kops*, 105 Wis. 2d 614, 618, 314 N.W.2d 892, 894 (Ct. App. 1981).

discipline in correctional facilities. The defendant contends, and the trial court held, that the cases in support of the general rule are either poorly reasoned or inapposite to the situation at hand because they fail to distinguish between different types of administrative sanctions imposed. We agree that much of the case authority upon which the state relies is distinguishable and that it fails to squarely address the constitutional implications of the question posed in this case. We are persuaded, however, that these cases are nonetheless correct in concluding that double jeopardy considerations do not bar the imposition of both criminal and administrative sanctions of the sort here imposed for conduct which violates both a criminal statute and a prison rule.

The double jeopardy clause affords three distinct constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), cited with approval in *State v. Bowden*, 93 Wis. 2d 574, 580, 288 N.W.2d 139, 141 (1980). We deal here with the third of these protections.

In *Helvering v. Mitchell*, 303 U.S. 391 (1938), the United States Supreme Court held that the multiple punishment prohibition was not violated by the imposition of civil penalties on a past due tax bill against a taxpayer who had been convicted of tax fraud. The court concluded that the purpose of the sanction was not punitive, but remedial, because it helped to reimburse the government for the heavy expenses of the tax fraud investigation. The significance of this case is in its determination that the subjection of an individual to both criminal and administrative sanctions for the same conduct did not necessarily run afoul of the double jeopardy clause, and

in its focus on the intent or purpose of the administrative sanction to resolve the multiple punishments question.

*Pagliaro v. Cox,* 143 F.2d 900 (8th Cir. 1944), was the first major case to reach the issue whether the imposition of prison rule sanctions for conduct which also constituted a crime violated the double jeopardy clause. The only prison sanction in question was a loss of statutory good time.

The court held that "no double punishment" was involved.

> The allowance of good time . . . is a privilege which is conditioned expressly by . . . statute . . . allowing it upon a record . . . showing "that [the inmate] has faithfully observed all the rules and has not been subjected to punishment." . . . The existence or the forfeiture of good time is in no sense dependent upon whether the misconduct also may be a criminal act.

143 F.2d at 901. Forfeiture of good time was also the sanction in *Gibson v. United States,* 161 F.2d 973 (6th Cir. 1947), which simply cited *Pagliaro* in reaching the identical conclusion under like circumstances.

*Pagliaro* was later applied as controlling authority in *Patterson v. United States,* 183 F.2d 327 (4th Cir.), *cert. denied,* 340 U.S. 893 (1950), and *Patterson* in *Mullican v. United States,* 252 F.2d 398 (5th Cir. 1958). Both these cases, however, involved escapees who were placed in solitary confinement. Neither case recognized the distinction in the types of administrative sanctions involved; each seemed to consider the matter as having been decisively resolved by *Pagliaro.* Later cases relying on *Mullican* and *Patterson* failed to distinguish for jeopardy purposes between the forfeiture of statutory good time and the imposition of segregated confinement.[6]

---

[6] *See, e.g., United States v. Stuckey,* 441 F.2d 1104, 1105–106 (3rd Cir.), *cert denied,* 404 U.S. 841 (1971); *United States v. Lepiscopo,* 429 F.2d 258, 261 (5th Cir.), *cert denied,* 400 U.S. 948

The failure of these cases to address the distinct difference between loss of good time and segregation from the general prison population, is critical to our inquiry. In Wisconsin, good time is a contingent privilege granted to a prisoner by statute for good behavior, and is subject by statute to forfeiture for disobedience of prison regulations and duties. Sec. 53.11, Stats. A prisoner has no constitutional right to good time credit; nor does a prisoner's loss of good time implicate constitutional double jeopardy concerns. *Pagliaro, supra.* Conversely, a prisoner has a state-created conditional liberty interest, protected under the fourteenth amendment to the federal constitution, to be part of the general prison population. *State ex rel. Irby v. Israel,* 100 Wis. 2d 411, 419, 302 N.W.2d 517, 522 (Ct. App. 1981). Segregating a prisoner from the rest of the prison community therefore implicates the constitutional guaranty against multiple punishments.

In addition, this court does not have the option of following that line of cases which resolves the issue by summarily declaring that prison disciplinary proceedings do not invoke double jeopardy concerns because they are not "essentially criminal" in nature. *Breed v. Jones,* 421 U.S. 519, 528 (1975).[7] These courts deem the inmate to be outside the reach of double jeopardy protections without

---

(1970); *United States v. Apker,* 419 F.2d 388, (9th Cir. 1969); *Rush v. United States,* 290 F.2d 709, 710 (5th Cir. 1961); *State v. Vinson,* 443 P.2d 700, 701 (Ariz. Ct. App. 1968); *State v. Lebo,* 282 A.2d 804, 805 (Vt. 1971); *Conley v. Dingess,* 250 S.E.2d 136, 137–38 (W. Va. 1978) (overruled on other grounds).

[7] *See, e.g., Yager v. Commonwealth,* 407 S.W.2d 413, 416 (Ky. 1966), *cert denied,* 385 U.S. 1030 (1967); *People v. Bachman,* 213 N.W.2d 800, 801 (Mich. App. 1973); *State v. Kjeldahl,* 278 N.W.2d 58, 60 (Minn. 1979); *State v. Kern,* 447 S.W.2d 571, 577 (Mo. 1969); *State v. Kerns,* 271 N.W.2d 48, 50 (Neb. 1978); *State v. Weekley,* 240 N.W.2d 80, 82–3 (S.D. 1976); *State v. Williams,* 356 P.2d 99, 100 (Wash. 1960).

consideration of whether the administrative discipline to which they are subjected constitutes a form of "punishment" in the constitutional sense.[8] The Wisconsin Supreme Court has assumed a more precise posture in the context of parole revocation proceedings:

> The essential nature of a proceeding is not determined by its form or label . . . *United States v. U.S. Coin & Currency,* 401 U.S. 715, 718, (1970). A proceeding is criminal, for double jeopardy purposes, if it imposes a sanction *intended as punishment. See: Helvering v. Mitchell,* 303 U.S. 391, 399 (1938). [Emphasis supplied.]

*State ex rel. Flowers v. H&SS Department,* 81 Wis. 2d 376, 383, 260 N.W.2d 727, 732 (1978). *Accord, State ex rel. Bieser v. Percy,* 97 Wis. 2d 702, 708, 295 N.W.2d 179, 181–82 (Ct. App. 1980).

Finally, it is of no consequence in Wisconsin that a later prosecution takes place in a judicial forum, while the prior discipline comes by way of administrative action. There is but one sovereign: the state. That sovereign may not delegate its power—here, to a subordinate administrative agency—so as to circumvent double jeopardy defenses. *State v. Ramirez,* 83 Wis. 2d 150, 153, 265 N.W.2d 274, 275 (1978).

This court's inquiry must therefore focus on whether the administrative discipline to which the defendant was subjected was "intended as punishment" for the alleged escape. That determination must necessarily weigh the purposes of the double jeopardy clause, the nature of the individual interests at stake, and the character of the administrative decision made. *See Flowers,* 81 Wis. 2d at 383, 260 N.W.2d at 732.

---

[8] *See e.g., State v. Tise,* 283 A.2d 666 (Maine 1971); *State v. Croney,* 425 S.W.2d 65, 67 (Mo. 1968); *State v. Procter,* 367 N.E.2d 908, 911 (Ohio Ct. App. 1977); *Nelson v. State,* 567 P.2d 522, 524 (Okla. Crim. App. 1977).

The United States Supreme Court has stated that the standards to be employed in examining whether "punishment" in the constitutional sense is involved include:

Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

*Bell v. Wolfish,* 441 U.S. 520, 537–38 (1979), quoting *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168–69 (1963). Thus, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell,* 441 U.S. at 538, quoted in *Bieser,* 97 Wis. 2d at 707, 295 N.W.2d at 181.

In making that determination, courts are required to consider the need of detention facilities for effective management which may justify restrictions having no primary punitive purpose.

In determining whether restrictions or conditions are reasonably related to the government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

*Bell,* 441 U.S. at 540 n. 23, quoting *Pell v. Procunier,* 417 U.S. 817, 827 (1974). [Citations omitted.]

Mindful of this caution, we observe that one of the paramount goals of a correctional institution is to rehabilitate: to instruct each inmate to function within a system of rules and norms. *See* Wis. Admin. Code, sec. HSS 303.01(3)(c) and Appendix. An escape by an inmate manifests that individual's unwillingness to abide by such a system. The application of rules of discipline may be required to instill in the inmate a respect for the rules of prison life and the rules of a socialized life, in general.

The program segregation imposed upon the defendant had as its primary purpose that very end—the correction of the defendant's behavior and attitude during his confinement in prison with the hope of facilitating his eventual return to society.

The maintenance of prison security and order was another reason for imposing the program segregation at issue. A correctional institution has a vital interest in preventing the disruption of its rehabilitation of inmates and also in ensuring the safety of all—both within and without the prison boundaries. Breaches of prison regulations—especially those which flaunt the institution's foundation as directly as an escape—threaten that interest at its core. Prison authorities must possess the means to enforce such regulations in an immediate way. Restraints directed toward that purpose do not, absent more, constitute "punishment" within the constitutional meaning of that term. *Bell,* 441 U.S. at 540. *See also State v. Mead,* 32 A.2d 273, 276 (Conn. 1943); *State v. Tise,* 283 A.2d 666, 668 (Me. 1971).

It cannot be denied that a punitive element attends an assignment to program segregation. A prisoner may well regard solitary confinement as serving a punitive end. Such punishment is, however, an incident of other and proper governmental purposes. An unconstitutional intention to punish cannot be seen as central to the impo-

sition of the sanctions. *Bell,* 441 U.S. at 538. [*Accord, State v. Weekley,* 240 N.W.2d 80, 82 (S.D. 1976).] Moreover, the question whether the restriction imposed for escape is reasonably related to the identified goals of rehabilitation, security, and order is one " 'peculiarly within the province and professional expertise of corrections officials,' " to which courts should defer absent a showing of substantial evidence to the contrary. *Id.* at 540 n. 23, quoting *Pell v. Procunier,* 417 U.S. at 827.

We therefore hold that the state is not barred by the double jeopardy clause from prosecuting the defendant for escape under sec. 946.43(3)(a), Stats.

*By the Court.*—Order reversed.