STATE of Wisconsin, Plaintiff-Respondent,†

v.

Richard Dean SUGDEN, Jr., Defendant-Appellant.

Court of Appeals

*No. 86–0638–CR. Submitted on briefs October 16, 1986.—
Decided March 4, 1987.*

(Also reported in 404 N.W.2d 126.)

† Petition to review and cross-petition to review filed. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant the cause was submitted on the briefs of *Michael J. Bauer* of *Hopp, Hodson, Powell & Raftery* of Sheboygan.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general and *Barry Levenson,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. The controlling issue concerns whether there was sufficient evidence to convict the defendant of escape based upon the state's theory of culpability. We hold that when the information al-

leges an escape *from an institution* and the jury is so instructed, the state must prove that the defendant progressed beyond the institution grounds. Because there was no proof of this fact, we reverse the escape conviction.

State's witnesses testified that a car commandeered by three inmates and carrying hostages crashed through an inner fence of the Kettle Moraine Correctional Institution but did not get beyond the gate of the outer fence. All inmates, including Richard Dean Sugden, Jr., were therefore seized.

The state charged Sugden with, among other counts, escaping from the custody of Kettle Moraine Correctional Institution contrary to sec. 946.42(3)(a), Stats.[1] Following a preliminary hearing, an information charged the same. He was also charged with hostage taking and operating a vehicle without consent. He was convicted of all three charges.

The state supports the escape conviction, even though Sugden never went beyond the institution grounds, based partly on the following reasoning:

"[A] prisoner may be guilty of an escape from his cell although unable to get beyond the prison walls. In other words the limits within which a prisoner may be required by law to remain, at a certain time, may be the walls of his cell, the walls of his prison, the boundaries of the prison farm, the immediate presence of his guard on the street or elsewhere, the general area of a project on which

---

[1]Section 946.42(3)(a), Stats., states:

(3) Any person in custody under any of the following circumstances who intentionally escapes from custody is guilty of a Class D felony:

(a) Sentenced to a state prison.

he is working, such as a road job, or some other. Whatever the limits may be for him at the time a departure therefrom is the physical part of an escape."

R. Perkins, *Criminal Law* 432 (1957), cited with approval in *Fabian v. State,* 239 A.2d 100, 107 (Md. Ct. Spec. App. 1968). The state points out that Sugden was confined to "Wisconsin Cottage" on the Kettle Moraine grounds. The state reasons that once Sugden overcame a guard and a supervisor there, he escaped legal custody. The state concludes that, by the time the commandeered automobile smashed into the outer fence, his escape *from custody* had already been completed.

We neither agree nor disagree with Perkins' view. However, the legislature makes the law on escape, not Perkins. If the legislature chooses to criminalize escape within an institution, thus conforming to Perkins' view, it may do so. If it has not, then the state may not rely upon his analysis.

Thus, whether the state's theory is correct rests upon statutory interpretation of the escape statutes. Statutory construction is a question of law. *State v. Nordness,* 128 Wis. 2d 15, 24, 381 N.W.2d 300, 304 (1986).

The precise question is: Has the legislature determined for us *when* an escape is accomplished? Section 946.42(1), Stats., tells us that escape is accomplished when a prisoner intentionally breaks away from "custody." Custody is defined, in pertinent part, as follows:

> "Custody" includes without limitation actual custody of an institution or of a peace officer or

370

> institution guard and constructive custody of pris-
> oners temporarily outside the institution whether
> for the purpose of work, medical care, a leave
> granted under s. 56.068 or otherwise.

Sec. 946.42(5)(b), Stats. (1983–84). Actual custody means actual imprisonment or physical detention. *State v. Schaller,* 70 Wis. 2d 107, 111, 233 N.W.2d 416, 418 (1975). Actual custody can be accomplished three ways—by custody of an institution, by custody of an institution guard or peace officer and by constructive custody of those temporarily outside the institution for various purposes.[2] The three terms are arguably not mutually exclusive. When a prisoner is in an institution, he or she is under institution custody. If accompanied by an institution guard or peace officer, he or she is under the physical restraint of that guard or officer. If the prisoner is on his or her own, either for medical purposes, work or leave, the prisoner is in constructive custody. It would not lack merit to argue that an escape from an institution guard can occur within the institution. The legislature may have chosen to criminalize this act as long as the intent is to "leave" without authority to do so. Sec. 946.42(5)(b), Stats. (1985–86). Intent to leave means an intent to be *at large after escape. See* sec. 973.15(7), Stats.

On the other hand, escape from an institution guard may be construed as an event which can only take place outside an institution. Otherwise, the term

---

[2]Section 946.42(5)(b), Stats. (1983–84), now sec. 946.42(5)(a), Stats., was amended in 1985 to include a secured juvenile correctional facility, a secure detention facility, or a juvenile portion of a county jail and constructive custody of juveniles as other sources of actual custody. The amendment does not affect our holding.

"escape from an institution" would be superfluous since practically any escape from an institution includes escape from a guard.

Had the state charged Sugden with escape based upon the fact that he overpowered institution guards with intent to leave lawful authority, this issue would be before us.

It is not. The state chose to charge escape from the (Kettle Moraine) institution, not escape from a guard. In its information, the state alleged that Sugden did as follows:

> after having ... been duly transferred by order of the Wisconsin Department of Health and Social Services to the Kettle Moraine Correctional Institution, did feloniously and intentionally escape from said custody, contrary to sec. 946.42(3)(a) of the Wisconsin Statutes ....

Thus, the state's information charged Sugden not with escape from a prison guard, but escape from the institution. The information therefore informed Sugden that he must prepare to meet the state's allegation that he escaped from Kettle Moraine; he was not informed that he must defend against a charge that he escaped when he overpowered and broke away from the guards.

This analysis is buttressed by the state's own theory of liability presented at trial—that escape from the cottage was tantamount to escape from an institution; the theory did not focus upon escape from the guards as being the criminalizing act.

The sixth amendment requires that a defendant be informed of the charge against him, *Clausen v. Clerk of Circuit Court,* 537 F. Supp. 1233, 1236 (E.D.

Wis. 1982). The purpose of the information is to inform the defendant of the charges against him. *State v. Dahlk,* 111 Wis. 2d 287, 292, 330 N.W.2d 611, 615 (Ct. App. 1983). The information tells a defendant of the state's theory of liability. *Cf. State v. Williquette,* 125 Wis. 2d 86, 89, 370 N.W.2d 282, 284 (Ct. App. 1985), *aff'd,* 129 Wis. 2d 239, 385 N.W.2d 145 (1986).

The state here informed the accused that its theory of liability lay in an escape from the institution. Moreover, the jury was instructed that escape from custody means the escape from the "physical control ... by an institution." A conviction cannot be affirmed on a theory not submitted to the jury. *Chiarella v. United States,* 445 U.S. 222, 236 (1980).

We conclude, therefore, that while there might have been sufficient facts to prove escape from a prison guard inside the institution, if the legislature intended that as a crime, it was a theory not relied upon during trial. Neither has this been explicitly argued on appeal. We may not consider whether Sugden has violated the statute by that means.

We are therefore left with the state's argument that escape from an institution can be accomplished without going outside the institution grounds—by escaping from a cottage upon the grounds. We conclude that this cannot be.

■

The legislature chose to criminalize escape from an institution. Unambiguously, when this particular allegation is made, it means that the defendant must get beyond the prison walls or physical boundaries in order for there to be sufficient evidence of guilt. Under the narrow facts here, the state has not proven its case. We direct that the escape conviction be reversed.

One other issue remains. Sugden claims he did not knowingly and intelligently waive his right to counsel. He concludes that his conviction on all charges, not just the escape charge, must be vacated and a new trial ordered.

We disagree. The record is replete with demonstrations of Sugden's disruptive and offensive behavior. Sugden rejected all three of his court-appointed lawyers. Shortly before trial, he disclaimed his third lawyer and demanded a fourth one; he requested a delay of the trial for this purpose. When told that there was an insufficient basis for hiring a fourth lawyer, Sugden opted to represent himself. The trial judge took pains to inform Sugden of the practical difficulties involved in self-representation, but Sugden was unmoved. The record shows an adequate, albeit limited, *Faretta* inquiry. *Faretta v. California*, 422 U.S. 806 (1975). The court's ruling was not an abuse of discretion. All convictions are affirmed except the escape charge.

*By the Court.*—Judgment affirmed in part, reversed in part.