STATE of Wisconsin, Plaintiff-Appellant,

v.

STATE EX REL. Larry Gene CAMPBELL,
Defendant-Respondent.†

Court of Appeals

*No. 89-1936. Submitted on briefs March 6, 1990.—Decided
April 17, 1990.*

(Also reported in 456 N.W.2d 870.)

†Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *E. Gordon Young,* assistant attorney general.

For the defendant-respondent the cause was submitted on the briefs of *Martha K. Askins,* assistant state public defender.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. The State of Wisconsin appeals from an order of the circuit court reversing an administrative decision of the Department of Health and Social Services, Division of Corrections. The Department had found Larry Gene Campbell guilty of an escape, contrary to sec. HSS 303.22 of the Administrative Code. Because we determine that the Department's conclusions were reasonable, we reverse the decision of the trial court.

In October of 1988, Campbell was a resident of St. John's Community Correction Facility in Milwaukee.[1] He was authorized to travel outside of the institution under escort. *See generally* Wis. Admin. Code, ch. HSS 325.[2] On the evening of October 26, 1988, Campbell was

---

[1]Campbell was serving a twenty-year sentence for third-degree murder, party-to-a-crime, concurrent with a life sentence for first-degree murder, party-to-a-crime. After serving approximately eleven years, Campbell was granted minimum security status.

[2]As of April, 1990, the regulations of the Department of Corrections have been recodified with the prefix DOC in the

permitted to leave St. John's to attend a movie. He was accompanied by a volunteer escort, a person assigned to supervise inmates outside the institution. *See* HSS 325.04. Campbell, however, did not follow his assigned schedule. He persuaded his escort to take him to the home of a female friend. Although Campbell returned to St. John's well before 10:30 p.m., the required time, he was outside of the control of the institution from approximately 6:55 p.m. to 8:45 p.m.

Two days later, Campbell admitted his conduct to his social worker. A conduct report was prepared, *see* HSS 303.66, and Campbell was given notice of a major disciplinary hearing against him, *see* HSS 303.68 and HSS 303.76. Campbell was charged with "Escape," HSS 303.22(1)(c) and (d), "Leaving assigned area," HSS 303.51, and illegal movement within and outside the institution, HSS 303.63. He was found guilty on all charges. Campbell's case was then referred to the program review committee, *see* HSS 302.18 and 302.19, which recommended changing Campbell's security status to medium, and he was transferred to a medium security facility.

Campbell petitioned the circuit court for certiorari review of the state's action. He argued that the Department's action was "arbitrary, capricious, and an abuse of discretion." He took particular issue with the Department's decision that he had committed an escape under HSS 303.22. Review was granted, and Campbell prevailed. In its order, the circuit court stated:

> The facts show clearly that petitioner was in an unassigned area and there was a violation as to peti-

administrative code. So, for example, the regulation proscribing escape may be found at DOC 303.22, rather than HSS 303.22 of the code.

tioner's movement outside the institution. Petitioner clearly understood the rules and regulations, knowingly violated them and cannot rely on some supposed authority of his escort. Nothing within the regulations endows on an escort the authority to supersede specific limitations on petitioner's conduct or movement.

This Court finds however that the conduct of the petitioner did not constitute an escape. Where, as here, an inmate returns within the specified time frame in a voluntary manner, a deviation from the authorized travel plan or intended outside activity may be a violation of other regulations [but] it does not legally constitute an escape. As indicated in the note of HSS 303.22 intent to escape must be proved to show [a] violation of HSS 303.22. Any inference which could be drawn from petitioner's deviation is clearly overcome by the totality of his conduct.[3]

---

[3]The note to HSS 303.22 provides in part:

Since escape is an extremely serious offense (it is one of the few disciplinary offenses which is frequently prosecuted), it is important to define it carefully. The old policy and procedure 4.01 was basically the same as this one; it read:

Residents shall not leave the confines of the institution proper, other designated authorized areas away from the institution to which they are assigned, or the custody and control of a staff member.

The only change is that now, if an inmate is off grounds on work or study release or on furlough, mere physical deviation from his or her assigned location is not enough to prove escape. Intent to escape must also be proved. This modification recognizes that unexpected situations may arise when an inmate is off grounds and unsupervised, and a certain amount of leeway must be available to inmates to deal with such situations. Of course, an inmate who deviated from a prescribed route or left an area would probably be guilty of violating HSS 303.24, Disobeying orders. If no unexpected situation arose, however, then deviation from the schedule would create a strong inference of intent to escape.

The trial court concluded that Campbell was unlawfully found guilty of violating HSS 303.22, and because this was the only major offense, the trial court ordered the Department to "revoke its guilty finding for that offense and restore petitioner to his prior custody rating of Minimum Security placing petitioner in a setting which is consistent with a minimum custody rating."[4]

This case involves the application of an administrative rule to undisputed facts. Our standard of review in such a case depends upon whether the agency's determination involves a value judgment. *Nigbor v. DILHR,* 120 Wis. 2d 375, 383-84, 355 N.W.2d 532, 537 (1984) (citing *Nottelson v. DILHR,* 94 Wis. 2d 106, 115-17, 287 N.W.2d 763, 768 [1980]). If a value judgment is involved, and if we conclude that the agency's expertise is significant to the value judgment, we give it some, although not controlling, deference. *Id.* We conclude that the interpretation and enforcement of regulations governing prison security and order involve significant value judgments on the part of the Department. In *State v. Killebrew,* 109 Wis. 2d 611, 327 N.W.2d 155 (Ct. App. 1982), *aff'd,* 115 Wis. 2d 243, 340 N.W.2d 470 (1983), we stated:

> A correctional institution has a vital interest in preventing the disruption of its rehabilitation of inmates and also in ensuring the safety of all—both within and without the prison boundaries. Breaches of prison regulations—especially those which flaunt the institution's foundation as directly as an escape—threaten that interest at its core. Prison

Wis. Admin. Code, ch. HSS 303 app. at 78 (*see* DOC 303 app. at 100; *see supra* note 2).

[4]The state successfully petitioned the circuit court for a stay of its order.

authorities must possess the means to enforce such regulations in an immediate way.

*Id.,* 109 Wis. 2d at 620, 327 N.W.2d at 160. Therefore, we will defer to the Department's determination as to what constitutes an escape under HSS 303.22 if its conclusions are reasonable. *See Nigbor,* 120 Wis. 2d at 384, 355 N.W.2d at 537.

The regulation proscribing escape provides:

**HSS 303.22 Escape. (1)** An inmate who does any of the following without permission and with the intent to escape is guilty of an offense:

(a) Leaves an institution;

(b) Leaves the custody of a staff member while outside of the institution;

(c) Does not follow his or her assigned schedule; or

(d) Leaves the authorized area to which he or she is assigned and does not return promptly.

**(2)** Any inmate who makes or possesses any materials with the intent to use them to escape is guilty of an offense.

Campbell makes two arguments on appeal: (1) that his conduct did not constitute an escape because it was with permission; and (2) that the state failed to prove that he intended to escape.

We reject Campbell's argument that the deviation from his itinerary was with permission. He contends that the volunteer escort had some sort of authority to permit such a change. This directly conflicts with the conclusions of the circuit court, and Campbell fails to cite any authority for this argument. We will not consider an argument unsupported by citations to legal authority. *See Lechner v. Scharrer,* 145 Wis. 2d 667, 676, 429 N.W.2d 491, 495 (Ct. App. 1988); *see also* Rule 809.19(1)(e), Stats.

The essential question presented by this appeal involves the scope of the element in HSS 303.22 requiring an intent to escape.[5] There is no dispute that Campbell did not follow his assigned schedule, *see* HSS 303.22(1)(c), and that he left the authorized area to which he was assigned and did not return promptly, *see* HSS 303.22(1)(d). Campbell clearly deviated from his temporary release itinerary. Although Campbell argues that he did not intend to escape,[6] the Division of Corrections determined that Campbell's conduct did constitute an escape under HSS 303.22, and we agree. We disagree with the rationale of the circuit court which concluded that Campbell lacked the intent to escape because he intended to return to the institution by the required time.[7]

---

[5]For the purpose of Chapter HSS 303: " 'Intentionally' means that the inmate had a purpose to do the thing or cause the result specified, or believed that his or her act, if successful, would cause the result specified." Wis. Admin. Code, sec. HSS 303.04(1).

[6]For the purposes of his disciplinary hearing, Campbell made the following statement: "It was not intended as an escape. I had every intention of returning and did so. I do regret what I did."

[7]In *United States v. Bailey,* 585 F.2d 1087 (D.C. Cir. 1978), *rev'd on other grounds,* 444 U.S. 394 (1980), the court stated: "Describing the requisite intent for escape as an 'intent to leave and not to return' is not completely satisfactory since it might not cover a prisoner who intends to take an unauthorized temporary leave of absence." *Id.,* 585 F.2d at 1092 n.13. "[A] prisoner who leaves custody to take even a temporary 'leave of absence' from the normal conditions of confinement possesses the requisite intent for escape." *Id.* at 1093 n.17. The dissent expressed a similar view on this aspect of the offense:

> [I]f a prisoner knows that he has no authority to leave prison and, *whatever his motivation,* still departs prison, *with the purpose of departing,* he has acted with the requisite intent. Thus, for example,

In *State v. Sugden,* 143 Wis. 2d 728, 422 N.W.2d 624 (1988), our supreme court addressed the statute imposing criminal sanctions on an inmate who "intentionally escapes from custody." *See* sec. 946.42(3), Stats. In *Sugden,* an inmate escaped from a cottage to which he was confined; however, he was recaptured before he was able to escape the prison grounds. The supreme court reversed a decision of this court that had overturned Sugden's conviction for escape. *Sugden,* 143 Wis. 2d at 734, 739, 422 N.W.2d at 626, 628, *reversing,* 137 Wis. 2d 367, 404 N.W.2d 126 (Ct. App. 1987). In its opinion, the supreme court relied on a line of cases from other jurisdictions that "conclude that the escape is complete when the inmate unlawfully removes himself from his conditions of confinement." *Id.,* 143 Wis. 2d at 738, 422 N.W.2d at 628. Thus, an inmate " ' "escapes if he removes himself from the imposed restraint over his person and volition." ' " *Id.* (quoting *People v. Quintero,* 241 N.W.2d 251, 252 (Mich. Ct. App. 1976)).[8]

if a prisoner leaves prison to visit his dying mother with the intent to return to prison, he has nevertheless "intended" to depart prison and he is therefore guilty of escape; it was still his purpose to avoid confinement, if only for a brief time.

*Id.* at 1122 (Wilkey, J., dissenting). Reversing the court of appeals, the Supreme Court held that the requisite intent to escape is established if the prosecution "demonstrates that an escapee knew his actions would result in his leaving physical confinement without permission." *Bailey,* 444 U.S. at 408.

[8]We note that the supreme court's decision in *Sugden* was particularly addressed to the language of sec. 946.42, Stats., proscribing the intentional "escape from custody." *See id.,* 143 Wis. 2d at 734-35, 422 N.W.2d at 626-27. Although HSS 303.22 uses different language and proscribes certain acts done "with the intent to escape," the court's rationale in *Sugden* pertains to the circumstances of this case. *Sugden* noted a possible distinction between an "escape from prison" and an "escape from custody."

Because Campbell voluntarily and intentionally removed himself "from the imposed restraint over his person and volition," *see id.,* 143 Wis. 2d at 738, 422 N.W.2d at 628, we conclude that Campbell had the intent to escape from custody at the time of his offense, even though his absence was intended to be temporary. *See id.* Therefore, the Department's conclusion that Campbell committed an escape, contrary to HSS 303.22, was reasonable and should have been affirmed by the circuit court. The decision of the circuit court is reversed.

*By the Court.*—Order reversed and cause remanded.

*See id.,* 143 Wis. 2d at 734–38, 422 N.W.2d at 626–28. At the time Campbell deviated from his itinerary, he was off institution grounds. Thus, if it is to have any effect at all on the conduct of Campbell or any other prisoner on temporary release, HSS 303.22 must embrace an "escape from custody." *See supra* note 3.