JOURNAL/SENTINEL, INC. and Paul Poda,
Petitioners-Appellants,

v.

Barbara J. AAGERUP, Respondent.

Court of Appeals

*No. 88–0095. Submitted on briefs June 8, 1988.—Decided July 20, 1988.*

(Also reported in 429 N.W.2d 772.)

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Robert A. Christensen* of *Foley and Lardner,* of Milwaukee.

On behalf of the respondent, the cause was submitted on the briefs of *James C. Reiher* and *John H. Lindquist* of *von Briesen & Purtell, S.C.,* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. This case involves the Public Records Law, secs. 19.35 and 19.85, Stats. Specifically, we address whether a custodian may initially withhold an autopsy report from the public in an ongoing criminal case on the stated grounds that the report is implicated in a crime detection effort. We hold that the custodian may do so. We also address whether, in this case, the nature of the particular crime investigated and material withheld in fact requires secrecy

from the public despite the strong policy favoring disclosure. We conclude that they do, and affirm the ruling of the trial court.

The pertinent facts are few. In July of 1987, Tara Kassen was found dead, presumably the victim of a homicide. A forensic pathologist performed an autopsy and issued a twenty-eight page autopsy report. In early August, appellant Poda formally requested a copy of the autopsy report from the coroner, as well as copies of the death certificate and certain dental records. The coroner, by her attorney, denied the request for the autopsy report, citing the Public Records Law exemption for information regarding crime detection, sec. 19.85(1)(d), Stats.[1]

Following the denial, Poda brought a mandamus action testing the legality of the withholding. The trial court conducted an *in camera* review of the report, and took testimony from Police Chief Call and from Dr. Young, who conducted the autopsy. The trial court determined that withholding was justified because disclosure might impede the ongoing criminal investigation. The court therefore found that the potential harm to the public interest which could result from disclosing the report outweighed the benefits of inspection.

Our inquiry into the propriety of the trial court's ruling is twofold. First, we must determine whether the custodian's denial was made with the specificity required by sec. 19.35, Stats., and case law. Since we

[1]Section 19.85(1)(d), Stats., reads in pertinent part:

**19.85 Exemptions.** (1) ... A closed session may be held for any of the following purposes:

....

(d) Considering specific applications of probation or parole, or considering strategy for crime detection or prevention.

resolve that question in favor of the custodian, we must determine whether the reasons for withholding here are sufficient to outweigh the strong public policy favoring disclosure.

As a rule, any person has a right to inspect any public record. *See* sec. 19.35(1), Stats.; *Hathaway v. Joint School Dist. No. 1,* 116 Wis. 2d 388, 394, 342 N.W.2d 682, 685 (1984). Our law presumes that public records shall be open to the public. *Oshkosh N.W. Co. v. Oshkosh Library Bd.,* 125 Wis. 2d 480, 482, 373 N.W.2d 459, 461 (Ct. App. 1985). Nonetheless, the public's right to access is not absolute, and access is barred on those occasions when the public interest in nondisclosure outweighs the right to inspect. *Id.* at 483, 373 N.W.2d at 461. When inspection is requested, the record's custodian must weigh these interests, remaining mindful that exceptions to the policy of disclosure are rare. *Id.; Hathaway,* 116 Wis. 2d at 397, 342 N.W.2d at 687.

A custodian's denial of access to a public record must be accompanied by a statement of the specific public policy reason for the refusal. *Oshkosh N.W. Co.,* 125 Wis. 2d at 485, 373 N.W.2d at 463. Poda first maintains that the denial of access here was not made with the requisite specificity. We disagree.

The custodian's denial first pointed to a specific statutory exception to the Open Meetings Law, sec. 19.85(1)(d), Stats. This subsection, which is made applicable to records by sec. 19.35(1), Stats., grants an exception to the requirement of disclosure when a governmental unit considers probation and parole applications and when it considers strategies to deal with several aspects of law enforcement. *See id.*

The custodian next pointed to the particular protected interest she believes is implicated in this case: crime detection. She then stated that the autopsy is excluded from disclosure.

██ The specificity requirement is not met by a mere citation to the exemption statute. *Oshkosh N.W. Co.,* 125 Wis. 2d at 485, 373 N.W.2d at 463. Nor is it met by a bald assertion that release is not in the public interest. *Beckon v. Emery,* 36 Wis. 2d 510, 517, 153 N.W.2d 501, 503–04 (1967). To meet the specificity requirement, the custodian must give a public policy reason that the record warrants confidentiality. *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 427, 279 N.W.2d 179, 184 (1979). On the other hand, when denying inspection, the custodian is not required to provide a detailed analysis of the record and why public policy directs that it must be withheld.

Here, the custodian stated that the autopsy was part of a law enforcement detection effort. She did not merely cite to the exemption statute, but rather pointed to a particular statutorily-recognized public policy reason for confidentiality: crime detection.

In *Breier,* the custodian police chief declined to release records showing the charges on which people were arrested. The stated ground for refusal was that releasing the reason for arrest could harm people personally and economically. *Id.* at 428, 279 N.W.2d at 184. The *Breier* court understood this as a statement of "concern for the rights of individuals in their reputations." *See id.* at 433, 279 N.W.2d at 187. This language, like "crime detection," is a statutory reason for denial of access. *See* sec. 14.90(3)(e), Stats. (1965) (now sec. 19.85(1)(f), Stats.). The court found that the custodian had stated his reason for denying inspec-

tion. *Breier,* 89 Wis. 2d at 428, 279 N.W.2d at 184. In the instant case, custodial denial was more succinct but no less adequate than that in *Breier.*

■

The coroner's denial here serves what we deem to be the dual purpose of the specificity requirement. First, it ensures that the custodian did not act arbitrarily, but rather balanced the general public interest in disclosure against a particular public interest in secrecy of certain matters as required. *See State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 682, 137 N.W.2d 470, 475 (1965); *Oshkosh N.W. Co.,* 125 Wis. 2d at 483, 373 N.W.2d at 461. Second, the denial gave the requester notice sufficient to allow preparation of a challenge to the withholding.

Poda also argues that the reason for withholding was inadequate because "there is no way an autopsy report can be characterized as a 'strategy' for ... the detection of crime." She claims that "[w]hile sec. 19.85(1)(d) may suggest a policy ground applicable to portions of some autopsy reports, an autopsy report per se simply does not fit within the statutory language."

■

We find this ground for objection without merit. The custodian did not withhold the record because if was "an autopsy"; she withheld "the autopsy" on the grounds that it was implicated in the crime detection effort of this particular case. Poda herself has agreed to the custodian's withholding of some material on this ground. The custodian may wrongly put greater emphasis on secrecy than on the right to know, or balance publicity against more of the record than is strictly relevant to her public policy concern, all

without abrogating her duty to be specific.[2] As in *Breier,* however, the stated reason for denying access may be specific but insufficient. We turn now to the question of sufficiency.

Pursuant to an *in camera* hearing on Poda's mandamus action, the trial court found that disclosure of approximately one-quarter of the report "may seriously impede the investigation of the case." This is a factual determination, and as such it will not be upset on appeal unless it is clearly erroneous. *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983).

We find no such error. The finding was based on a review of the autopsy and on testimony of experienced law enforcement and medical personnel. The witnesses testified that some of the value of the report's information lies in its confidentiality. When withheld, it could be used as a tool for finding and prosecuting Kassen's killer. The trial court assessed the testimony and the record and found that the latter was indeed a potential tool for crime detection when undisclosed. We find nothing in the record to suggest otherwise.

"Whether harm to the public interest from inspection outweighs the public interest in inspection is a question of law. The duty of the custodian is to specify reasons for nondisclosure and the court's role is to decide whether the reasons asserted are suffi-

---

[2]This situation was contemplated and resolved in *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 683, 137 N.W.2d 470, 475 (1965): "If a single record or document is sought to be inspected, and disclosure of only a portion is found to be prejudicial to the public interest, the trial judge has the power to direct such portion to be taped over before granting inspection."

cient." *Breier,* 89 Wis. 2d at 427, 279 N.W.2d at 184. We review questions of law *ab initio. Lippstreu v. Lippstreu,* 125 Wis. 2d 415, 416, 373 N.W.2d 53, 54 (Ct. App. 1985).

■

Our supreme court has long recognized that records pertinent to ongoing criminal investigations may implicate an overriding public interest in preserving secrecy. *Breier,* 89 Wis. 2d at 438, 279 N.W.2d at 189. The reasons for this position include: the information might reveal an informer's identity, or take away a necessary element of surprise from the police, or enable a perpetrator to obscure evidence or hide identity. *See* Note, *Public Access to Law Enforcement Records in Wisconsin,* 68 Marq. L. Rev. 705, 720–21 (1985). Poda point out, however, that autopsies are not generally held to be investigative tools. For example, in a case she cited to the trial court, particular autopsies are specifically held to determine cause of death and to serve no other purpose. *Denver Publishing Co. v. Dreyfus,* 520 P.2d 104, 107 (Colo. 1974).

We think it self-evident, though, and the *Dreyfus* court concurs, that some autopsies are invaluable strategies for crime detection. The *Dreyfus* holding is limited to the documents at issue. That court stated: "[T]he autopsy reports *sought* contain only medical information relevant to a determination of the cause of death. Additional investigative information, including reports by the coroner's investigators, may be contained in the coroner's files but is not recorded in the autopsy report itself." *Id.* (emphasis added). The *Dreyfus* court then posited the following hypothetical situation:

[S]uppose that an autopsy disclosed that the sub-ject had died from the ingestion of small doses of arsenic over a long period of time, whereas "natu-ral causes" was the reputed cause of death. Under such circumstances, the district attorney or the investigative officers might determine that non-disclosure of the cause of death would be advanta-geous in the early stages of the investigation.... Although the burden of proof would be on the custodian of the report that burden would appear to be easily met under such circumstances.

*Id.* at 107–08.

The custodian has set forth three precise reasons (all of which, commentators have observed, are valid reasons for withholding but none of which we may divulge here) that the withheld information is of peculiar value, when secret, in concluding the unre-solved presumptive homicide. We believe that the overriding public interest in criminal investigation is therefore implicated. We note that three-fourths of the record at issue has been released. We note too that nothing in that record has called into question the integrity of the custodian—or of law enforcement generally. We note that murder is a particularly cruel fate, and that its victims should be few and its perpetrators punished. We find that confidentiality has here been shown to advance those dual goals of the Tara Kassen investigation. We find that the public's right to know does not outweigh those goals here. The order of the trial court is affirmed.

*By the Court.*—Order affirmed.