STATE of Wisconsin EX REL. Thomas R. MORKE,
Petitioner-Appellant-Petitioner,

v.

Jennifer DONNELLY, Respondent.

Supreme Court

*No. 88-1061. Argued March 27, 1990.—Decided June 6, 1990.*

(Also reported in 455 N.W.2d 893.)

For the petitioner-appellant-petitioner there was a brief by *Thomas R. Morke,* Lexington, Virginia, and a brief by *Bryan D. Woods, Bruce K. Kaufmann* and *Jenswold, Studt, Hanson, Clark & Kaufmann,* Madison and oral argument by *Mr. Woods.*

For the respondent the cause was argued by *Frank D. Remington,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

CALLOW, WILLIAM G., J.   This is a review of a decision of the court of appeals, *State ex rel. Morke v. Donnelly,* 151 Wis. 2d 219, 444 N.W.2d 730 (Ct. App. 1989), which affirmed an order of the circuit court for Dane County, Judge Angela B. Bartell. The order of the circuit court granted Jennifer Donnelly's (Donnelly's) motion to quash the alternative writ of mandamus that the circuit court had previously issued. The circuit court granted the motion to quash because it concluded that Thomas R. Morke's (Morke's) petition for writ of mandamus failed to state a cause of action under the public records statute, sec. 19.21, Stats., *et seq.*

The issue in this case is whether the facts in Morke's petition for writ of mandamus state a cause of action under the public records statute, sec. 19.21, Stats., *et seq.* We hold that Morke's petition for writ of manda-

mus states a cause of action under the public records statute; therefore, we reverse the decision of the court of appeals.

We begin by setting forth the relevant facts. While Morke was an inmate at Kettle Moraine Correctional Institution, he read a newspaper article stating that two hacksaw blades had been found in an inmate's cell at Waupun Correctional Institution (Waupun) and that investigators were looking for a gun that an informant said had been smuggled into Waupun. The article also stated that the president of the guard union at Waupun requested the acting warden at Waupun to lock down Waupun for a complete search.

After reading the newspaper article, Morke wrote the records custodian at Waupun, seeking to obtain copies of incident reports regarding the hacksaw and gun investigation and copies of records regarding the request for the lock down and search and the response to the request. Morke's written request cited secs. 19.35(4) and 19.36(6), Stats.[1] In a written response to Morke's request, the records custodian at Waupun refused to give

---

[1]Section 19.35(4), Stats., provides as follows:

TIME FOR COMPLIANCE AND PROCEDURES. (a) Each authority, upon request for any record, shall, as soon as practicable and without delay, either fill the request or notify the requester of the authority's determination to deny the request in whole or in part and the reasons therefor.

(b) If a request is made orally, the authority may deny the request orally unless a demand for a written statement of the reasons denying the request is made by the requester within 5 business days of the oral denial. If an authority denies a written request in whole or in part, the requester shall receive from the authority a written statement of the reasons for denying the written request. Every written denial of a request by an authority shall inform the requester that if the request for the record was made in writing, then the determination is subject to review by mandamus under s. 19.37(1) or upon application to the attorney general or a district attorney.

Morke copies of the requested records because the records related to "an ongoing and sensitive investigation which deals with the safety and security of the institution. . .." The Waupun records custodian informed Morke that he could appeal the denial to Donnelly, records custodian for the Wisconsin Department of Health and Social Services.

Morke then wrote to Donnelly, appealing the refusal of the Waupun records custodian to provide him with copies of the records that he had requested. In a letter dated October 16, 1987, Donnelly affirmed the Waupun records custodian's denial of Morke's request for copies of the incident reports regarding the hacksaw and gun investigation. Donnelly provided the following reasons for denying this portion of Morke's request:

> The investigation [regarding the hacksaw and gun incident] is continuing, but even after the investigation concludes I would deny your request. It is my opinion that disclosure of the records would present an increased risk that you or other prisoners would defeat our security measures, thereby presenting the possibility of an escape attempt or violent incident within our institutions. Disclosure would be of clear overriding harm to the public interest.

In the same letter, Donnelly informed Morke that both the request for the lock down and search of Waupun and the response to the request were oral, thus no such records existed.

Section 19.36(6), Stats., provides as follows:

> SEPARATION OF INFORMATION. If a record contains information that may be made public and information that may not be made public, the authority having custody of the record shall provide the information that may be made public and delete the information that may not be made public from the record before release.

After Donnelly refused Morke's request, Morke petitioned for a writ of mandamus in the circuit court. Morke's petition—which incorporated by reference his request to the records custodian at Waupun, the Waupun records custodian's denial, his appeal to Donnelly, and Donnelly's response—contains the following allegations: that Donnelly is a records custodian for the Wisconsin Department of Health and Social Services and is therefore charged with custodial duties set forth in the public records law; that Morke requested that Donnelly provide him with nonconfidential information contained in public records he had learned about through a newspaper article; that the request was made pursuant to the public records law, Chapter 19 of the Wisconsin Statutes; that Donnelly denied a portion of his request and stated that no records existed with respect to the remainder; and that the records were withheld in violation of the public records law.

On November 12, 1987, an alternative writ of mandamus was issued by the circuit court. Stating that Donnelly had refused to perform her public duty to allow Morke access to public records in her custody and that her refusal denied Morke of his clear legal right to such records, the alternative writ of mandamus commanded that Donnelly either provide Morke with access to the requested public records or show cause for withholding the records. Subsequently, Donnelly moved to quash the alternative writ of mandamus. Donnelly argued that the motion to quash should be granted because Morke's petition failed to state a claim upon which relief could be granted. The circuit court granted the motion to quash.

Morke appealed, and the court of appeals affirmed, with one judge dissenting. *State ex rel. Morke v. Donnelly,* 151 Wis. 2d 219. This court granted the petition for review.

In determining whether it was proper to grant Donnelly's motion to quash, the issue before this court is the same as the issue that was before both the circuit court and the court of appeals. A motion to quash a writ of mandamus "shall be deemed a motion to dismiss the complaint under s. 802.06(2)." Section 783.01, Stats. The issue this motion presents is whether the facts alleged in the petition for writ of mandamus state a cause of action under the public records statute, sec. 19.21, Stats., *et seq. State ex rel. Dalton v. Mundy,* 80 Wis. 2d 190, 194-95, 257 N.W.2d 877 (1977).

The following principles guide the resolution of this issue:

> [The] petition should not be interpreted narrowly to defeat it. The general rule is that a pleading will be fairly and liberally construed to give effect to its object and purpose. This rule is especially applicable in this case where the action is to compel public officers to perform their prescribed statutory duties. This court has previously noted that the "public policy, and hence the public interest, favors the right of inspection of documents and public records." *Beckon v. Emery,* 36 Wis. 2d 510, 516, 153 N.W.2d 501 (1967).

*Dalton,* 80 Wis. 2d at 196.

Because the outcome of the case at hand is controlled by the *Dalton* case, we discuss *Dalton* in detail. In *Dalton,* it was Joan Dalton's desire to inspect Milwaukee County General Hospital records regarding that hospital's policies and practices in handling abortion cases. The request was directed to two county officers of Milwaukee county. One of the county officers referred the request to the Milwaukee County Corporation Counsel because, according to the county officer, the request involved individual patient records, the disclosure of

which would result in a breach of confidence. Although Dalton made it clear to corporation counsel that she sought to discover statistical information about the hospital's handling of abortion cases, not to discover the identity of patients, the request was refused. *Id.* at 192-94.

After the request was refused, Dalton petitioned in the circuit court for an alternative writ of mandamus. This court summarized Dalton's petition as alleging as follows:

> that Milwaukee County General Hospital is a public hospital operated by Milwaukee County through the Milwaukee County Board of Public Welfare and that [the persons to whom the request was directed] are county officers within the meaning of sec. 19.21, Wis. Stats.; that [the county officers] have in their lawful possession or control or are lawfully entitled to the possession or control of records and documents relating to the operation of the hospital and in particular those requested by Dalton; that Dalton requested permission to examine or copy certain public records and documents . . .; and that her request was refused in violation of sec. 19.21, Wis. Stats.

*Id.* at 194 (footnote omitted).

An alternative writ of mandamus was then issued by the circuit court. The county officers moved to quash the writ. The circuit court denied the motion to quash and granted the county officers leave to file a return. *Id.*

In this court (and in the circuit court), the county officers argued that the petition failed to state a cause of action because Dalton's request was for individual patient records which should not be considered public records under sec. 19.21, Stats. This court rejected the county officers' argument, agreeing with the circuit court that the petition was not properly interpreted as request-

ing individual patient records. *Id.* at 195. This court concluded that the petition "encompasses only records which the trial court properly described as statistical records, administrative records and records which are not personal to or identifiable with individual patients. The petition thus states a cause of action under sec. 19.21, Stats., and the motion to quash was properly denied." *Id.* at 197.

Finally, this court discussed the point in the proceedings where it was appropriate for the court to consider the county officers' reasons for withholding the records:

> Any assertions by [the county officers] that they cannot comply with the writ because, for example, they do not have the records requested by Dalton (the existence of which is admitted for purposes of the motion to quash), or because the information requested is available only in individual patient medical records which they claim are not within the public records statute or are privileged, were not properly before the trial court and are not properly before this court at this stage of the proceedings. These defenses, if they exist in this case, and any others, may be raised in making a return to the alternative writ of mandamus, and the trial court will then determine the validity of the defenses.

*Id.* at 196 (footnotes omitted).

In light of this court's decision in *Dalton,* we now determine whether Morke's petition for writ of mandamus states a cause of action. The summary of the allegations in Morke's petition *(supra* at 525) is in substance identical to the summary of allegations in Dalton's petition *(supra* at 527), and this court concluded that Dalton's petition stated a cause of action. In *Dalton,* the

only reason the county officers provided in support of their contention that the petition failed to state a cause of action was that the records requested in the petition were individual patient records; according to the county officers, individual patient records could not be considered public records under sec. 19.21, Stats. As previously stated, this court interpreted Dalton's petition as requesting public records, not individual patient records, and therefore determined that the petition stated a cause of action. In this case, there appears to be no dispute that the records Morke requests in his petition are within the scope of the public records statute. Thus, Morke's petition states a cause of action under the public records statute, and the motion to quash the alternative writ of mandamus should have been denied.

Throughout the proceedings in this case, Donnelly has contended that a portion of Morke's request cannot be complied with because no records exist[2] and that disclosure of the remainder of the requested records would be detrimental to the public interest. "[These defenses] were not properly before the trial court and are not properly before this court at this stage of the proceedings. These defenses, if they exist in this case, and any others, may be raised in making a return to the alternative writ of mandamus, and the trial court will then determine the validity of the defenses." *Dalton,* 80 Wis. 2d at 196.

Because Morke's petition states a cause of action, this case must be remanded to the circuit court. On remand, Donnelly may raise her defenses in filing a return to the alternative writ of mandamus, and the circuit court can then determine the validity of the defenses.

---

[2] "[T]he existence of [these records] is admitted for purposes of the motion to quash . . .." *Dalton,* 80 Wis. 2d at 196.

██

As has been stated, in Donnelly's refusal, she contended that disclosure of a portion of Morke's request would be contrary to the public interest. Under the decision of the court of appeals, if she raises this defense in her return, the circuit court would not be required, in reviewing the validity of this defense, to examine the records *in camera.* We conclude that, because the content of the requested records is not known, the court of appeals erred in holding that the *in camera* inspection was unnecessary.

In *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 137 N.W.2d 470 (1965), we set forth the procedure that is to be followed in arriving at the determination of whether the harm done to the public interest by disclosing the public record outweighs the right of a member of the public to have access to the public record:

> The duty of first determining that the harmful effect upon the public interest of permitting inspection outweighs the benefit to be gained by granting inspection rests upon the public officer having custody of the record or document sought to be inspected. If he determines that permitting inspection would result in harm to the public interest which outweighs any benefit that would result from granting inspection, it is incumbent upon him to refuse the demand for inspection and state specifically the reasons for this refusal. If the person seeking inspection thereafter institutes court action to compel inspection and the officer depends upon the grounds stated in his refusal, the proper procedure is for the trial judge to examine *in camera* the record or document sought to be inspected. Upon making such *in camera* examination, the trial judge should then make his determination of whether or not the harm likely to result to the public interest by permitting the inspection out-

weighs the benefit to be gained by granting inspection.

In reaching a determination so based upon a balancing of the interests involved, the trial judge must ever bear in mind that public policy favors the right of inspection of public records and documents, and, it is only in the exceptional case that inspection should be denied. In situations, such as in the instant case, where inspection is sought of a number of documents, the ultimate decision after conducting the balancing test might be to grant inspection as to certain of the documents and deny it as to others. If a single record or document is sought to be inspected, and disclosure of only a portion is found to be prejudicial to the public interest, the trial judge has the power to direct such portion to be taped over before granting inspection.

*Youmans*, 28 Wis. 2d at 682–83 (footnote omitted). *Youmans* shows that the *in camera* inspection assists the court in determining whether the harm to the public interest by allowing inspection outweighs the public interest in inspection.[3] After reviewing the records *in camera,* the court may decide that only certain records or portions of a particular record should be released.

The case of *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 279 N.W.2d 179 (1979), provides an example of a situation where an *in camera* inspection would not be required. In *Newspapers, Inc.,* the managing editor of the Milwaukee Journal sought regular access to certain police records. The Chief of Police for the city of Milwaukee granted the editor access to records showing "the

---

[3] "Whether harm to the public interest from inspection outweighs the public interest in inspection is a question of law." *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979).

name, age, and date of birth of all persons taken into custody, the time the suspect was taken into custody, and the names of the arresting officers . . . [but] [h]e refused to permit . . . access to records showing the charge on which particular persons were arrested." *Newspapers, Inc.,* 89 Wis. 2d at 421. The Chief of Police's reason for withholding the records showing the charges upon which persons were arrested was "possible personal and economic harm to individuals arrested." *Id.*

This court concluded that the public interest in allowing inspection of the records showing the charges for which persons were arrested outweighed any interest of the public in protecting the arrested persons' reputations by withholding the records. *Id.* at 440. To reach this conclusion, conducting an *in camera* inspection of the records of the charges was not necessary. This court determined that the charges were to be made available in all cases, regardless of the particular individual or charge involved. *Id.* at 439. Thus, it was known by all parties involved, including the court, without inspection, the content of the requested records, and the only question was whether the records of the charges should be disclosed.

In the case at hand, we know little about the content of the requested records, assuming they exist. We do know that some of the information printed in the newspaper article Morke read might be contained in the requested records. The records may contain some information the disclosure of which would be harmless to any asserted public interest, or they may be entirely unavailable to Morke for the reasons stated in Donnelly's original denial of Morke's request. The content of the requested records is known only by Donnelly, the custodian.

The law is clear, however, that the custodian does not have the final word on the question of whether the requested record or records will be disclosed. Rather, the law provides that the requester may seek court review of the custodian's decision refusing disclosure. In order for the court to fulfill its role of deciding whether Donnelly was correct in concluding that the public interest made the requested records entirely unavailable to Morke, the court must, like the custodian, know the content of the records. The reviewing court can then determine whether, as a matter of law, the entire request must be either granted or denied, or whether certain documents or portions of particular documents may be disclosed. It is impossible to make this determination in this case without an *in camera* inspection because the content of the requested records is not known by the court.

We conclude that Morke's petition for writ of mandamus states a cause of action under the public records statute, sec. 19.21, Stats., *et seq.;* therefore, it was improper for the circuit court to grant Donnelly's motion to quash. On remand, Donnelly's defenses to the disclosure of the requested records may be raised in making a return to the alternative writ of mandamus, and the circuit court will then evaluate the validity of the defenses. If Donnelly maintains in her return that any portion of the request must be withheld because disclosure would be contrary to the public interest, the circuit court must examine the records *in camera* to determine what, if any, may be disclosed.[4]

---

[4]The circuit court granted Donnelly's motion to quash, concluding that Donnelly's denial contained a sufficient explanation showing that the disclosure would be detrimental to the public interest. The circuit court was premature in determining what the public interest required. According to *Dalton,* the issue of

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

CALLOW, WILLIAM G., J. (concurring). The dissent concludes that the majority opinion will further complicate the problems in maintaining a prison system. Nothing could be further from the truth. Nowhere does the majority opinion state that Morke should be given access to the requested records. In fact, the majority opinion cites with approval the principle announced in *Youmans* that public records are properly withheld when the harm done to the public interest in disclosing the records outweighs the right of a member of the public to have access to the records.

The majority opinion holds that Morke's petition is adequate and that the issues of the public interest and the existence of the requested records are relevant once those issues have been raised in a return, not at the motion to quash stage. The majority opinion also holds that an *in camera* inspection is necessary in this case. Thus, the majority opinion simply declares that the proper procedures were not followed here, and I find no basis in the law for abandoning the proper procedures due to the status of the requestor. In this case, following the proper procedural course does not "waste" judicial resources because evaluating the records custodian's defenses after a return has been filed is no more time consuming than evaluating them at the motion to quash stage.

I find no support for the dissent's erroneous conclusion in the only case the dissent cites, *Oshkosh North-*

---

whether the public interest requires disclosure is properly considered when a return has been filed.

*western Co. v. Oshkosh Library Board,* 125 Wis. 2d 480, 373 N.W.2d 459 (Ct. App. 1985).

LOUIS J. CECI, J. (dissenting).   The prison staff discovered a gun and hacksaw blades in the control of prison inmates. Very properly, the prison officials refused to give prisoner Morke the facts as to how that information was acquired and/or developed. Common sense would dictate that such information not be given out to other prison inmates.

The circuit court and the court of appeals agreed, without an *in camera* inspection of records, that the requested information should not be provided. Those decisions were predicated upon the state's response to the writ of mandamus, in the form of a motion to quash which was filed on behalf of the records custodian of the department of health and social services. It is obvious that the lower courts did not believe the prisoner had a clear legal right to the information. *See Oshkosh Northwestern Co. v. Oshkosh Library Board,* 125 Wis. 2d 480, 373 N.W.2d 459 (Ct. App. 1985). I wholeheartedly agree with the determinations made by the circuit court and the court of appeals.

The judiciary should not have to waste valuable resources on this type of case and then require an additional hearing to decide that a prisoner in a maximum-security prison should *not* be given this information. Where do we stop? Would the majority require an *in camera* inspection if an inmate demanded a copy of the prison blueprints? I do not believe the legislature could have agreed that the open records statute would be applied to these facts.

It seems to me that the almost overwhelming problems in maintaining a prison system will be further complicated by this decision, and I therefore dissent.

I am authorized to state that Justice Donald W. Steinmetz joins in this dissenting opinion.