STATE EX REL. Thomas R. MORKE, Petitioner-Respondent,

v.

RECORD CUSTODIAN, Department of Health & Social Services, Respondent-Appellant.

Court of Appeals

*No. 90–0327–CR. Submitted on briefs October 9, 1990. —Decided December 13, 1990.*

(Also reported in 465 N.W.2d 235.)

For the respondent-appellant the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Robert W. Larsen,* assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *Thomas R. Morke, pro se,* of Lexington, Virginia.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J.   Jean Gilpin, the record custodian of the Wisconsin Department of Health and Social Services, appeals from an order compelling her to turn over certain prison records to Thomas Morke, a recently-released prison inmate. The issue is whether Gilpin properly weighed the harm that would flow from providing the records to Morke against the strong presumption in favor of public access to state records. We conclude that she did, and we reverse the order.

While still incarcerated, Morke requested from the institution's record custodian the names, home addresses, and published home telephone numbers of all persons employed at the institution.[1] The custodian refused Morke's request, stating that the employees and their families would be subjected "to a substantial risk of harassment or other jeopardy" if he were given the information. Morke appealed the denial to Gilpin who affirmed, stating the reasons underlying her decision:

> [Y]our access to the requested details about the FLCI employes would subject them and their families to a substantial risk of harassment or other jeopardy. Moreover, I believe your record access would tend to discourage persons from serving as institution employes, and would thereby adversely affect the state's correctional system. I believe these consequences would cause such harm to the public interest as to outweigh any presumed right of record access.

Morke then filed a petition for mandamus in circuit court. After issuing an alternative writ of mandamus requiring the department to release the records or show cause why it need not, and after considering the department's return to the writ, the court directed Gilpin to turn over the records, stating that Morke's request presented no threat to internal prison security because he was no longer a prisoner.[2] The department appealed.[3]

---

[1]Fox Lake maintains no institutional staff directory. However, the home addresses and telephone numbers of employees are available from a card file system.

[2]We agree with the trial court that an *in camera* inspection of the records was not necessary to render a decision. "[A]ll parties involved, including the court, without inspection, [knew] the content of the requested records, and the only question was whether the records . . . should be disclosed." *State ex rel. Morke v. Donnelly,* 155 Wis. 2d 521, 532, 455 N.W.2d 893, 898 (1990).

Gilpin argues that the harm in allowing Morke access to the records outweighs the strong public policy in favor of public access. "Whether harm to the public interest from inspection [of public records] outweighs the public interest in inspection is a question of law" which we decide without deference to the trial court's decision. *Journal/Sentinel, Inc. v. Aagerup*, 145 Wis. 2d 818, 825, 429 N.W.2d 772, 775 (Ct. App. 1988) (citation omitted).

As a general rule, any person has a right to inspect any public record. Sec. 19.35, Stats. "Our law presumes that public records shall be open to the public." *Journal/Sentinal*, 145 Wis. 2d at 822, 429 N.W.2d at 773-74 (citation omitted). "Nonetheless, the public's right to access is not absolute, and access is barred on those occasions when the public interest in nondisclosure outweighs the right to inspect." *Id.* (citation omitted).

If the public officer having custody of the record "determines that permitting inspection would result in harm to the public interest . . . outweigh[ing] any benefit that would result from granting inspection," the officer must "refuse the demand for inspection and state specifically the reasons for this refusal." *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 682, 137 N.W.2d 470, 475 (1965).

---

[3]This appeal is at least the fourth public records action brought by Morke to reach this court. In *State ex rel. Morke v. Parole Board*, 148 Wis. 2d 250, 434 N.W.2d 824 (Ct. App. 1988), he sought records regarding his eligibility for parole. In *State ex rel. Morke v. Donnelly*, 151 Wis. 2d 219, 444 N.W.2d 730 (Ct. App. 1989), *rev'd*, 155 Wis. 2d 521, 455 N.W.2d 893 (1990), he sought information about prison officers' weapons. In *State ex rel. Morke v. Record Custodian*, 154 Wis. 2d 727, 454 N.W.2d 21 (Ct. App. 1990), he sought disciplinary records of fellow inmates.

"We measure the sufficiency of the department's explanation [for its refusal] as of the time it denied Morke's request." *State ex rel. Morke v. Record Custodian,* 154 Wis. 2d 727, 733, 454 N.W.2d 21, 24 (citation omitted). "That he has since been released from Fox Lake is irrelevant." *Id.*

We conclude that the reasons stated by Gilpin for denying Morke access—concern for the safety and well-being of the prison staff and their families and for institutional morale—outweigh the general rule in favor of access to government records and would constitute an unwarranted invasion of the employees' personal privacy. Indeed, Fox Lake's superintendent was forced to remove local telephone directories from the library after institution employees complained that they were being harassed by inmates. The institution's "vital interest in . . . ensuring the safety of all—both within and without the prison boundaries" would be jeopardized if Morke were given what he seeks. *State v. Killebrew,* 109 Wis. 2d 611, 620, 327 N.W.2d 155, 160 (Ct. App. 1982). Additionally, persons may be discouraged from serving as institution employees if they know the public would be provided with personal information about them on request.

Our ruling is not inconsistent with the public policy behind the open records law: "[Because] a representative government is dependent upon an informed electorate, it is . . . the public policy of this state that persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them." Sec. 19.31, Stats. Granting Morke's request would in no way further the purpose of the open records law; the information he seeks neither "informs the electorate," promoting better

self-governance, nor concerns "official acts" of government employees. There is very little, if any, general public interest in allowing access to personal information about prison employees that bears no apparent relation to their public duties.

Finally, we reject Morke's assertion that the publication elsewhere—in a telephone book, for example—of some of the information he seeks undercuts the reasons given for denying his request. Although the department cannot prevent him from gathering the information he seeks elsewhere, the department is not required "to help him complete a project inimical to institutional security." *Morke v. Record Custodian,* 154 Wis. 2d at 733, 454 N.W.2d at 24.

*By the Court.*—Order Reversed.

DYKMAN, J. (dissenting). The legislature has determined that the identity of a person seeking information under our open records law is irrelevant. Sec. 19.35(1)(i), Stats.[1] In addition, the legislature has declared that "[t]he denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." Sec. 19.31, Stats.

Notwithstanding these strong legislative directives, the majority concludes that because Morke was a pris-

---

[1]Section 19.35(1)(i), Stats., provides:

Except as authorized under this paragraph, no request under pars. (a) to (f) may be refused because the person making the request is unwilling to be identified or to state the purpose of the request. Except as authorized under this paragraph, no request under pars. (a) to (f) may be refused because the request is received by mail, unless prepayment of a fee is required under sub. (3)(f). A requester may be required to show acceptable identification whenever the requested record is kept at a private residence or whenever security reasons or federal law or regulations so require.

oner in the Wisconsin prison system, he is not entitled to the information he seeks. This creates very real problems for a legislative body. Must the legislature add "and we really mean it" to the language to prevent courts from ignoring it?

Had a newspaper or television station requested the information Morke seeks, would the majority opinion come to the same conclusion? I think not. But, as a result of *stare decisis,* a media representative seeking names of state employees will now be denied access because of the precedent set by this case. At the very least, confusion will be introduced into the law as trial and appellate courts struggle to distinguish this case.

Finally, the majority ignores the standard by which we review trial court findings. Without mentioning our standard of review, it addresses the facts *de novo.* This in effect overrules *Journal/Sentinel, Inc. v. Aagerup,* 145 Wis. 2d 818, 825, 429 N.W.2d 772, 775 (Ct. App. 1988), where we said: "the trial court found that disclosure of approximately one-quarter of the report 'may seriously impede the investigation of the case.' This is a factual determination, and as such it will not be upset on appeal unless it is clearly erroneous." (Citation omitted.)

Here the trial court found "Mr. Morke cannot be said to be any threat to the internal security of the institution or its employees, above and beyond that presented by any members of the public because he is no longer incarcerated there." The "seriously impede the investigation" language of *Journal/Sentinal* and the "threat to the internal security" language in this case are indistinguishable. I would accord the trial court the deference required.

I agree with the majority's implicit conclusion that prisoners' or ex-prisoners' rights to public records should be curtailed. But that is not the public policy chosen by

the legislature. Were I writing for the majority, I would defer to the trial court's findings, and adopt its conclusion that Morke is entitled to the information he seeks.