COALITION FOR a CLEAN GOVERNMENT, Dennis Foerster, Plaintiff-Appellant,†

v.

James E. LARSEN, City of Fox Lake, Defendants-Respondents.

Court of Appeals

*No. 90-2721. Submitted on briefs June 6, 1991.—Decided December 12, 1991.*

(Also reported in 479 N.W.2d 576.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Dennis Foerster, pro se,* of Newburg, on behalf of the *Coalition for a Clean Government.*

For the defendants-respondents the cause was submitted on the brief of *Kathryn L. Ryan* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. The Coalition for a Clean Government appeals from a judgment dismissing its mandamus action under sec. 19.37(1), Stats., against the City of Fox Lake and its police chief, James E. Larsen. The Coalition seeks to compel Larsen, as the legal custodian of traffic citations in the police department, to mail its agent, Dennis Foerster, copies of certain citations. We conclude that the Wisconsin Public Records Law does not require the custodian to copy a public record and mail the copy to the requester. We therefore affirm the judgment.

On February 19, 1990, Dennis Foerster addressed a to-whom-it-may-concern letter to the city requesting the

names and addresses of drivers who had been issued certain traffic citations by the city from January 1, 1989 to February 1990. The city police had issued Foerster a traffic citation during this period. Foerster enclosed a check for $3 to pay copy charges. Larsen returned Foerster's check the same day and advised him that they did not have the "manpower" to fulfill Foerster's request. Larsen advised Foerster that he could appear in court on the citation on March 12, 1990. The next day, Foerster addressed a further to-whom-it-may-concern request which modified his request to cover the period from January 1, 1989 to November 1, 1989. Foerster again enclosed his check to cover copy charges.

On February 23, 1990, Larsen returned Foerster's check and advised him as follows: "As per [section] 19.35(1)(a), you may make an appointment to view the records any Tuesday of your choosing between 8:00 a.m. and 12 noon and 1:00 p.m. to 4:00 p.m." On February 28, 1990, Foerster renewed his request that Larsen produce the requested records. He objected to travelling from his residence in Newburg to Fox Lake to view the requested records. When Larsen did not respond to Foerster's request, the Coalition began this mandamus action. Neither Larsen nor the city challenges Foerster's assertion that he sought the requested public records on behalf of the Coalition.

Larsen argues that he complied with the public records law by making the records requested by Foerster available for inspection and copying during the department's office hours. The Coalition contends that this interpretation of the public records law negates sec. 19.35(1)(i), Stats., insofar as it permits requests for public records by mail. The Coalition argues that it would be pointless to make a request by mail if the requester could

be forced to travel to the custodian's office to inspect and copy the records.

The facts are undisputed. The application of the public records law to undisputed facts presents a question of law, which we decide *de novo*. *Wisconsin State Journal v. University of Wisconsin-Platteville*, 160 Wis. 2d 31, 36, 465 N.W.2d 266, 268 (Ct. App. 1990).

Traffic citations are public records subject to public records inspection statutes. *Beckon v. Emery*, 36 Wis. 2d 510, 515-16, 153 N.W.2d 501, 503 (1967). The right to inspect public records is, however, not absolute, but is presumptive. *In re Zimmer*, 151 Wis. 2d 122, 131, 442 N.W.2d 578, 582 (Ct. App. 1989) (citing *Hathaway v. Green Bay School Dist.*, 116 Wis. 2d 388, 397, 342 N.W.2d 682, 687 (1984)).

Section 19.35(1)(a), Stats., provides in part: "Except as otherwise provided by law, any requester has a right to inspect any record." Section 19.35(1)(b) provides:

> Except as otherwise provided by law, any requester has a right to inspect a record and to make or receive a copy of a record which appears in written form. If a requester requests a copy of the record, the authority having custody of the record may, at its option, permit the requester to photocopy the record or provide the requester with a copy substantially as readable as the original.

The police department of the city is an "authority," as defined in sec. 19.32(1), Stats. Larsen, as the department's highest ranking officer and chief administrative

officer, is the legal custodian of the department's records. Section 19.33(4), Stats.

The Coalition contends that Larsen was required to state specific public policy reasons for denying Foerster access to the traffic citations. It argues that under sec. 19.35(4), Stats., Larsen could either fill Foerster's request or notify Foerster that he denied Foerster's request and the reasons therefor. The Coalition asserts that Larsen's offer to allow Foerster to inspect the citations at his office was not a sufficient public policy reason for denying Foerster's request.

We conclude that Larsen was not required to state a public policy reason for his limitation on the times when Foerster could inspect the traffic citations filed in Larsen's office. Larsen's limitation was procedural, not substantive. Section 19.34(2), Stats., prescribes when the authority having custody of public records shall permit access to those records. The Coalition does not claim that Larsen violated sec. 19.34(2) by limiting Foerster's right to inspect to "any Tuesday of your choosing" during prescribed hours. It argues that Foerster could not be required to come to Larsen's office, but had an absolute right to have the citations copied by Larsen's office and mailed to Foerster. We disagree.

The Coalition contends that sec. 19.35(1)(i), Stats., gives a requester the right to request a public record by mail and to receive copies of public records in the same manner. Section 19.35(1)(i) provides in part that "no request under pars. (a) to (f) may be refused because the request is received by mail, unless prepayment of a fee is required . . .." The Coalition also argues that Larsen's interpretation of the public records law would render surplusage sec. 19.35(3)(d), Stats., which provides: "An authority may impose a fee upon a requester for the

164

actual, necessary and direct cost of mailing or shipping of any copy or photograph of a record which is mailed or shipped to the requester."

Larsen concedes that Foerster could request copies of the traffic citations by mail. He claims, however, that he had the option of filling Foerster's request by mail or by requiring Foerster to do his own copy work in Larsen's office. We agree.

Foerster's request was made under sec. 19.35(1)(b), Stats. As noted, sec. 19.35(1)(b) provides that "the authority having custody of the [requested] record may, *at its option,* permit the requester to photocopy the record or provide the requester with a copy substantially as readable as the original." (Emphasis added.) Thus, the records custodian may elect to provide the requester with a copy of the requested record *or* permit the requester to photocopy the record. Our construction of sec. 19.35(1)(b) is confirmed by sec. 19.35(2), Stats., which provides:

> The authority shall provide any person who is authorized to inspect or copy a record under sub. (1)(a), (b) or (f) with facilities comparable to those used by its employes to inspect, copy and abstract the record during established office hours. An authority is not required by this subsection to purchase or lease photocopying, duplicating, photographic or other equipment or to provide a separate room for the inspection, copying or abstracting of records.

These provisions clearly and unambiguously give the authority having custody of a requested public record the option of filling a request for a public record by making the requested record available for copying by the requester during the authority's office hours. Therefore, Larsen did not violate the public records law when he

failed to fill Foerster's request by copying and mailing the citations to Foerster.

The Coalition also complains that Larsen did not comply with sec. 19.35(4), Stats., when he denied Foerster's first request because of lack of "manpower." We need not decide whether this was a valid reason to deny Foerster's request. Foerster altered his records request and Larsen did not persist in his refusal to fill Foerster's request because of lack of personnel. Therefore, Larsen's response to Foerster's initial request became moot.

■

The Coalition also argues that Larsen waived his right to rely on sec. 19.35(1)(b), Stats., when in his response of February 23, 1990, he stated that Foerster could make an appointment to view the records "[a]s per [section] 19.35(1)(a)." We consider that Larsen's response of February 23, 1990, was not an attempt to deny Foerster's request but was merely a recognition that under sec. 19.35(1)(a), Foerster had a right to inspect the requested records. Section 19.35(1)(b) simply explains the requester's right to inspect a record. Larsen's response did not deny Foerster's right to make or receive a copy of the requested citations.

The Coalition argues that it is not reasonable to require someone living a considerable distance from the custodian's office to appear personally at the office to inspect and copy a public record. This is an argument to be addressed to the legislature. The legislature has concluded that custodians are not required to do copy work for requesters of public records.

■

The Coalition further argues that to adopt Larsen's construction of the public records law would undermine the public policy that a requester may remain anonymous. Section 19.35(1)(i), Stats., provides in part that

"no request under pars. (a) to (f) may be refused because the person making the request is unwilling to be identified . . .." This provision does not negate the option which the custodian has of requiring the requester to do the copying of a requested public record. The requester can inspect a public record and copy it without identifying himself or herself to the custodian. We therefore reject the Coalition's argument.

We conclude that nothing in the public records law requires the records custodian to provide the requester with public records by mail. The law is satisfied if the requester is given the right to inspect and copy a public record.

*By the Court.*—Judgment affirmed.