STATE of Wisconsin EX REL. William N. LEDFORD, Petitioner-Appellant,

v.

Nancy TURCOTTE, Respondent-Respondent.†

Court of Appeals

*No. 94–2710. Submitted on briefs May 9, 1995.—Decided June 8, 1995.*

(Also reported in 536 N.W.2d 130.)

†Petition to review granted.

For the petitioner-appellant the cause was submitted on the brief of *William N. Ledford, pro se,* of Waupun.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Alan Lee,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J. William Ledford, a prison inmate, requested certain information from the Department of Corrections relating to an investigation into allegations that members of the prison correctional staff had

246

"unlawfully taken, possessed and consumed Canad[a] Geese . . . at the Waupun State Farm." He also requested various other documents pertaining to an unrelated incident.

Nancy Turcotte, chief of the section of correctional farms, informed Ledford that she was forwarding his request to the department's legal counsel and would respond upon receiving counsel's advice. Hearing nothing for several weeks, Ledford commenced a mandamus action seeking the information.

The department's return acknowledged its delay in responding to Ledford's request and conceded liability for $100 "damages" under § 19.37(2), STATS.[1] And while the department provided Ledford with most of the requested information, it did not furnish copies of the interviews with correctional officers regarding the Canada geese matter, claiming that disclosure of the information would compromise the officers' effectiveness. The department forwarded the interview documents directly to the trial court for its *in camera* inspection.

The court decided the matter on briefs—apparently without examining the submitted records—concluding that the department's reasons for denying access to the records were sufficiently specific and otherwise adequate under the public records law, and ruled that the public policy favoring nondisclosure outweighed "the strong public policy favoring disclosure." The court also denied Ledford's request for punitive damages, and he appeals. Other facts will be discussed below.

---

[1] The statute provides in pertinent part as follows: "The court shall award . . . damages of not less than $100 . . . to the requester if the requester prevails in whole or in substantial part in [a mandamus] action filed under [this section] . . . ."

Ledford argues first that the department's delay in responding to his request is sufficient, in and of itself, to warrant disclosure of the sought-after records. The case he cites as support for the argument, however, *Saenz v. Murphy*, 162 Wis. 2d 54, 469 N.W.2d 611 (1991), does not stand for the proposition he advances. *Saenz* was not an open-records case. It involved a challenge to a prison disciplinary proceeding, and Ledford apparently cites it solely for the proposition that "an issue is waived if it is not raised before the trier of fact." *Id.* at 63, 469 N.W.2d at 615. We infer his argument to be that because the department did not respond to his request in a timely fashion, it must be considered to have "waived" any right to claim confidentiality with respect to the requested records.

Section 19.37, STATS., provides remedies for non-disclosure of requested information. It permits the requester to compel production of documents withheld in violation of the open-records law through a mandamus action, and it provides for recovery of damages, costs and attorney fees in certain cases in which the requester prevails in the action. The statute does not require *per se* production of documents for the custodian's failure to make prompt reply to the request, and Ledford has offered no case authority supporting such a proposition.

As to the validity of the department's action in withholding the requested information, it is well settled that access to public records may be denied where "the harm to the public interest [resulting] from inspection outweighs the public interest in inspection" or "a clear statutory exception or an existing common law limitation to the general presumption favoring the

right of inspection" exists. *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta*, 162 Wis. 2d 142, 156, 469 N.W.2d 638, 643 (1991). When a demand to inspect public records is made, the custodian of the record "must weigh the competing interests involved and determine whether permitting inspection would result in harm to the public interest that outweighs the recognized public interest in inspecting public records." *Id.* at 157, 469 N.W.2d at 643. If the custodian determines that the request should be denied, he or she must state the specific policy reasons relied on to make that determination. *Id.*

On appeal, our inquiry reflects a two-step process:

> "First, we must decide if the trial court correctly assessed whether the custodian's denial of access was made with the requisite specificity. Second, we determine whether the stated reasons are sufficient to permit withholding, itself a two-step analysis. Here, our inquiry is: (1) did the trial court make a factual determination supported by the record . . . whether the documents implicate the public interests in secrecy asserted by the custodian[ ] and, if so, (2) do the countervailing interests outweigh the public interest in release."

*Mayfair*, 162 Wis. 2d at 157, 469 N.W.2d at 643 (quoting *Milwaukee Journal v. Call*, 153 Wis. 2d 313, 317, 450 N.W.2d 515, 516 (Ct. App. 1989)).

The department stated that it was denying Ledford access to copies of the interviews with the officers in question because of "the propensity and ability of inmates to use any information about correctional officers to harass prison staff," which could, in turn, "hinder [the] officers['] ability to properly perform the[ir] functions" and thus "adversely affect the[ir] safety . . . ."

The trial court concluded that the department's explanation was adequate to justify nondisclosure. We consider de novo whether the public interest in nondisclosure outlined in the department's response outweighs the public interest in disclosure.[2] *See Call,* 153 Wis. 2d at 317, 450 N.W.2d at 516. We conclude that it does not.

The record contains only passing references to the Canada geese matter and one interview "summary" of corrections staff in the department's return to the writ of mandamus. We must therefore determine whether the information was properly withheld on the language of Ledford's request, in which he asked for copies of documents relating to the department's "investigation of unlawfully taken, possessed and consumed Canad[a] Geese in the fall of 1992 at the Waupun State Farm . . . by correctional staff."

There are, to be sure, valid reasons for withholding personal information about prison staff from inmates at the institution. Indeed, we held in *State ex rel. Morke v. Record Custodian,* 159 Wis. 2d 722, 465 N.W.2d 235 (Ct. App. 1990), that a prisoner's request for the names, home addresses and telephone numbers of all persons employed at the prison during the requester's incarceration was properly denied. Providing such information, we said, would jeopardize employees' "personal pri-

---

[2] In *Journal/Sentinel, Inc. v. Aagerup,* 145 Wis. 2d 818, 825-26, 429 N.W.2d 772, 775 (Ct. App. 1988), we said that "balancing" of the public interest in disclosure against the public interest in withholding access to public records *is itself* a question of law, which we review independently. We also noted that, under the law, " 'The duty of the custodian is to specify reasons for nondisclosure and the court's role is to decide whether the reasons asserted are sufficient.' " *Id.* (quoted source omitted).

vacy" and "safety," and that danger, coupled with the potential for discouraging others from serving as institution employees, justified nondisclosure. *Id.* at 726, 465 N.W.2d at 236.

Even with that in mind, however, and remembering also that prison officials are in a superior position to judge the effects of, and risks presented by, particular actions, this case is unique in that Ledford is requesting documents related to an investigation into allegedly illegal conduct on the part of prison staff. If the investigation revealed illegal conduct on the part of public employees, the public is entitled to that information, and the possibility that the information would subject the officers to ridicule or harassment by inmates is an insufficient reason, in our view, to overcome the legislative declaration underlying the public records law that its terms shall be construed in every instance with a presumption of complete public access, consistent with the conduct of government business. "The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." Section 19.31, STATS. It is, according to the legislature, "the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employe[e]s who represent them." *Id.*[3]

---

[3] The supreme court has recognized the statutory language as creating a " 'general presumption of . . . law . . . that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential.' " *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta,* 162 Wis. 2d 142, 156, 469 N.W.2d 638, 643 (1991) (quoted source omitted).

Public policy also dictates that public officers and employees who engage in potentially illegal conduct should have no expectation that public records relating to that conduct will be suppressed simply because news of the records' existence may make their jobs more difficult or dilute their effectiveness in some way.

Finally, Ledford's status as a prison inmate does not affect the disposition of his request. Neither the identity of the requester nor the reasons underlying the request are factors that enter into the balance. *See* § 19.35(1)(i), STATS. (request may not be refused because requester is unwilling to be identified or to state the purpose of the request). *See also George v. Record Custodian*, 169 Wis. 2d 573, 578, 485 N.W.2d 460, 462 (Ct. App. 1992) (under § 19.35(1)(i) "requester need not give a reason for his or her request to inspect a public record"); *Coalition for a Clean Gov't v. Larsen*, 166 Wis. 2d 159, 166-67, 479 N.W.2d 576, 579 (Ct. App. 1991) (public policy expressed in 19.35(1)(i) is that a requester "may remain anonymous").

We conclude that the department's reasons for nondisclosure were legally inadequate and we therefore order the trial court to grant Ledford's petition for a writ of mandamus.[4]

---

[4] Ledford also argues that the trial court erred in denying his claim for punitive damages under § 19.37(3), STATS., and in ordering him to apply his $100 damage award toward court costs.

Section 19.37(3), STATS., provides that a court "may award punitive damages to the requester" if it finds that an authority has arbitrarily and capriciously denied or delayed response to a request. In this case, the trial court determined that the department's delay in responding to Ledford's request was due to inadvertence and thus was neither arbitrary nor capricious.

*By the Court.*—Order reversed and cause remanded with directions.

Ledford has not persuaded us that the facts found by the court underlying that determination are clearly erroneous and we are satisfied that, as a matter of law, an inadvertent act cannot be arbitrary and capricious within the meaning of the statute. We thus see no error in the trial court's denial of Ledford's punitive damages claim.

As to Ledford's challenge to the order requiring him to apply his damage award to court costs, the department concedes that it was error to do so. On remand, that portion of the court's order should be deleted.