# MAYFAIR CHRYSLER-PLYMOUTH, INC., Plaintiff-Respondent,

## v.

# Nick BALDAROTTA, Legal Custodian of Records of the Wisconsin Department of Revenue, and Wisconsin Department of Revenue, Defendants-Appellants.†

Court of Appeals

*No. 89–0985. Submitted on briefs November 10, 1989.—Decided February 22, 1990.*

(Also reported in 453 N.W.2d 922.)

†Petition to review granted.

For the defendants-appellants the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, with *Robert W. Larsen,* assistant attorney general, of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *Jeffrey A. Kremers* and *Diane*

*Slomowitz* of *Fox, Carpenter, O'Neill & Shannon, S.C.* of Milwaukee.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J. This is a mandamus action commenced under the Wisconsin Open Records Law, secs. 19.31–19.39, Stats., challenging the Department of Revenue's denial of a request for access to certain records on grounds that it had promised anonymity to an "informant" and feared that the sought-after records might lead to disclosure of the informant's identity. We conclude that the reasons asserted by the department were insufficient as a matter of law to support the denial of access to the records, and we affirm the summary judgment directing disclosure of the information.

Mayfair, aware of the department's interest in its financial affairs, wrote to the agency asking permission to inspect and copy "a letter from a former employee" and certain checks and other records accompanying the employee's letter. The department denied the request on grounds that the requested information was "not a record as the term is defined in sec. 19.32(2)," Stats.,[1] and Mayfair commenced this mandamus action.

The department then provided Mayfair with redacted copies of various records in its possession. The materials were edited to delete any and all references the department felt might lead to discovery of the informant's identity. As a result, the records received by Mayfair were edited to the point that, in the trial court's

---

[1]Section 19.35(1), Stats., gives the public the right to inspect "any record." Section 19.32(2) defines "record" as, among other things, "any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by [a public] authority."

words, they "had virtually no specific information left on them." Mayfair then submitted a revised or supplemental request to the department asking for all records including check stubs, cancelled checks, time cards, and other business records which the department received from any source other than Mayfair. The department responded that it could provide no additional information because it had given a "pledge of confidentiality . . . to [an] informant, [and] must continue to deny access to portions of records which may identify the informant."

Mayfair moved for summary judgment[2] seeking release of the records on grounds that the department's reasons for denial of its request for the records were legally insufficient. As indicated, the trial court granted that motion and the department appealed.

Summary judgment "methodology" is well known and need not be discussed, or even cited, here. Suffice it to say that applying that familiar step-by-step analysis to the parties' pleadings and affidavits satisfies us that the legal issue is properly raised and appropriate for decision on Mayfair's motion. And, as in all cases where the question is one of law, our review is *de novo;* we owe no deference to the trial court's decision.

In sec. 19.31, Stats., the legislature made the following declaration of public policy:

> [I]t is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government . . ..
> [P]roviding persons with such information is

---

[2]In the pleading stage of the case, Mayfair had moved to strike that portion of the department's answer alleging that the information in its possession relating to Mayfair had been obtained "under a pledge of confidentiality." After receiving the department's response to Mayfair's second request for information, the motion was converted to one for summary judgment.

declared to be an essential function of . . . government . . . .. To that end, ss. 19.32 to 19.37 [the "Open Records Law"] shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

■

When a written request for access to a record is denied by the agency, sec. 19.35(4)(b), Stats., requires that the denial be in writing and state "the reasons for denying" the request. In addition, in making the decision to grant or deny, the records custodian "must weigh the competing interests involved and determine whether permitting inspection would result in harm *to the public interest* which outweighs the legislative policy recognizing the public interest in allowing inspection." *In Matter of Estates of Zimmer,* 151 Wis. 2d 122, 132, 442 N.W.2d 578, 582–83 (Ct. App. 1989), quoting *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 427, 279 N.W.2d 179, 184 (1979) (emphasis added).

> If the custodian denies access, he or she "must state specific public-policy reasons for the refusal . . . [and] must satisfy the court that the public-policy presumption in favor of disclosure is outweighed by even more important public-policy considerations." In short, "there is an absolute right to inspect a public document in the absence of *specifically stated sufficient* reasons to the contrary. *Estates of Zimmer,* 151 Wis. 2d at 132, 442 N.W.2d at 583 (citations omitted; emphasis in original).

■

Because the party seeking to seal a public record must rebut the "strong presumption" of disclosure, *C.L.*

797

*v. Edson,* 140 Wis. 2d 168, 182, 409 N.W.2d 417, 422 (Ct. App. 1987), some exposition of the evaluative factors resulting in the decision to deny must, of necessity, be included in the written denial. That conclusion is inescapable, for one of the primary reasons for requiring the custodian to "state specific policy reasons for the refusal" is to "provide a basis for review by a court." *Oshkosh Northwestern Co. v. Oshkosh Library Bd.,* 125 Wis. 2d 480, 483, 373 N.W.2d at 459, 461 (Ct. App. 1985). "It is not the . . . court's role to hypothesize reasons or to consider reasons for not allowing inspection which were not asserted by the custodian." *Newspapers, Inc. v. Breier,* 89 Wis. 2d at 427, 279 N.W.2d at 184.

To this end, we have held that "[w]hen inspection is requested, the record's custodian must weigh [the public interest in nondisclosure against the public's right of inspection], remaining mindful that exceptions to the policy of disclosure are rare," and also must include in the denial "a statement of the specific public policy reason for the refusal." *Journal/Sentinel, Inc. v. Aagerup,* 145 Wis. 2d 818, 822, 429 N.W.2d 772, 774 (Ct. App. 1988). If the custodian's reasons for denial are insufficient, "a writ of mandamus must be issued, compelling disclosure of the requested public record." *Oshkosh,* 125 Wis. 2d at 483, 373 N.W.2d at 461-62.

A detailed public policy analysis is not required, however. In *Journal/Sentinel,* the press sought access to an autopsy report which was part of the investigation and trial preparation in a criminal case. While the custodian's denial was not reported verbatim in the opinion, we described it as "first point[ing] to a specific statutory exception to the Open Meetings Law . . . [relating to] strategies to deal with several aspects of law enforce-

ment" and "next point[ing] to the particular protected interest [the custodian] believes is implicated in, this case: crime detection." *Id.,* 145 Wis. 2d at 822-23, 429 N.W.2d at 774. We found the statement sufficiently specific.

On the other hand, in *Beckon v. Emery,* 36 Wis. 2d 510, 517-18, 153 N.W.2d 501, 504 (1967), the supreme court held that recitation by the custodian's counsel that the records were "confidential," and that it would be "contrary to the public interest" to release them, was simply a legal conclusion and thus an insufficient statement of reasons for denying access.

While the department's statement in this case is a modest improvement over the statement in *Beckon,* we believe it is equally inadequate for it is equally general. It gives no indication that the department struck any balance between the public interest in disclosure and the public interest in nondisclosure, as required by the cases. It does not even hint at why the public interest would be better served by secrecy than by openness, nor does it suggest why the "pledge" of confidentiality was necessary in the first instance. We agree with the trial court that "[a]llowing a custodian to hand out pledges of confidentiality freely, with no explanation or showing of necessity, is contrary to the legislative policy objectives of the Open Records Law." The redacted records supplied by the department in this case illustrate the trial court's point: they are so saturated with "blackouts" that they are little more than blank pages.

We do not suggest that the custodian's reasons for denial must be lengthy or must set forth his or her reasons or thought processes in excruciating, or. even significant, detail. However, the custodian must provide reasons that are both sufficient and sufficiently explained

799

so as to allow a reviewing court to exercise independent judgment in assessing those reasons under appropriate legal standards.[3] In this case, the sole reason offered by the department for its denial of access to the records was that it had given a pledge of confidentiality to an anonymous informant and feared loss of that anonymity should the uncensored records be released. We see that as little different than the statements rejected by the supreme court in *Beckon* (that the information was "confidential" and that its release would be "contrary to the public interest") and in *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 683, 137 N.W.2d 470, 475 (1965) (that release "would not be in the public interest at this time, but on the contrary would be harmful to the public interest").

The department, arguing that its statement was adequate, places great reliance on *Rathie v. N.E. Wis. Tech. Inst.,* 142 Wis. 2d 685, 419 N.W.2d 296 (Ct. App. 1987). In that case, the technical school declined to disclose certain student attendance and grade records on grounds that their release was prohibited by a specific

---

[3]In *Newspapers, Inc. v. Breier,* for example, the court upheld the Milwaukee police chief's denial of access to information regarding the arrest of several persons where the chief explained his reasons in a two-paragraph letter outlining the possible "economic and personal harm" that might befall the arrestees should their employers, creditors or neighbors learn of the specific charges and discussing the police department's interest in efficient recordkeeping and effective law enforcement. *Id.,* 89 Wis. 2d at 421–22, 279 N.W.2d at 181–82. While the court accepted the chief's reasons as being sufficiently specific and explanatory, it went on to hold that they did not outweigh the public's interest in access to the records. *Id.* at 433, 440, 279 N.W.2d at 187, 190.

As we have said, the department's single-sentence reason for denying Mayfair's request does not allow the reviewing court to make a similar assessment in this case.

federal law—the Family Educational Rights and Privacy Act, 20 U.S.C.A. sec. 1232g (1978). After discussing the federal act in considerable detail, we upheld the school's denial of access to the records, noting that its obligation to "specifically state public policy reasons for the refusal was satisfied by stating that disclosure would violate the federal Act." *Id.* at 695, 419 N.W.2d at 301.

We do not see *Rathie* as in any way controlling the outcome of this case. As we noted in that case, the legislative declaration—the federal law prohibiting disclosure of the requested information—was itself a statement of the public policy of protecting and enforcing "students' rights of privacy." *Id.,* 142 Wis. 2d at 690, 419 N.W.2d at 299.

> Accordingly, to provide unrestricted third-party access to the personally identifiable information . . . as Rathie urges would directly undercut the public policy inherent in the federal Act. The Act represents a strong stand in favor of privacy and was enacted to provide broad limitations on third party-access in order to protect students' privacy rights. Indeed, the provisions assuring privacy of student records were enacted in response to "the growing evidence of abuse of student records across the nation." *Id.* at 693, 419 N.W.2d at 300 (citation omitted).

Thus, in *Rathie,* the public policy reasons were evident in the law cited in the school's letter declining to release the requested records. Here, however, all a court can glean from the department's denial is that it was prompted by a desire to protect the identity of a person to whom, for unexplained reasons, it had promised anonymity. Beyond that, we are left to "hypothesize" its reasons, and the result is the same as if no reasons at all were given. *Newspapers, Inc. v. Breier,* 89 Wis. 2d at

427, 279 N.W.2d at 184.[4] Because, as we have noted, "[t]here is an absolute right to inspect a public document in the absence of *specifically* stated *sufficient* reasons to the contrary," we conclude that the trial court properly granted Mayfair's motion. *Id.* (emphasis in original; citation omitted).

*By the Court.*—Judgment affirmed.

GARTZKE, P.J. *(dissenting).* The only information Mayfair wants is the name of its ex-employee who gave information about Mayfair to the department of revenue. The tenacity with which Mayfair seeks that name should give the informer concern.

Governmental agencies must be able to protect confidential informers. Our courts have said time and again that persons in our society have a duty to report wrongdoing to the government. For that reason, law enforcement agencies are privileged on public policy grounds to

---

[4]The department also relies heavily on *Stelloh v. Liban,* 21 Wis. 2d 119, 127, 124 N.W.2d 101, 105 (1963), where the supreme court recognized that the "privilege of non-disclosure of [a police informant's] identity" long known to the criminal law is also applicable to a civil suit against the police for false arrest. The sole issue at Stelloh's trial was whether he was arrested on probable cause, and the ancillary evidentiary question decided by the supreme court was whether evidence of information given to the police by informants prior to the arrest was admissible in the absence of disclosure of the informants' identities.

There was no "Open Records Law" issue in *Stelloh.* The decision turned on traditional principles recognizing the informant's privilege in criminal cases. We do not see the case as authority for the proposition advanced by the department in this case—that the bare statement that it had promised confidentiality to an informant is, as a matter of law, an adequate statement of reasons for the refusal to provide access to public records under secs. 19.31–19.39, Stats., and the cases decided thereunder.

withhold the names of informers in criminal and civil actions. *Stelloh v. Liban,* 21 Wis. 2d 119, 125–27, 124 N.W.2d 101, 104–05 (1963). The department has certain law enforcement functions. *See* secs. 73.03(3), (4), (8), (9), (10), (12) and 73.04(3), Stats.

Because of the department's law enforcement functions, the departmental employee who responded to Mayfair's request could have assumed that his or her refusal to disclose the informer's name was privileged. The employee could have assumed that no further explanation or weighing was necessary. The upshot of our opinion is that those assumptions were wrong, but the opinion may have shorn the informer of the protection he or she should have.

A petition for a peremptory writ of mandamus may be treated as one for an alternative writ and a fact-finding hearing may then be ordered. *Schend v. The St. George's German Aid Society,* 49 Wis. 237, 242, 5 N.W. 355, 357–58 (1880). If that is true, then no impediment should exist to the less drastic remedy of remanding for a better explanation.

We should direct the trial court to remand the matter to the agency to provide, if possible and justified, the reasons why the identity of the informer must be kept confidential. The trial court should retain jurisdiction and decide the matter on the basis of the agency's response.