MAYFAIR CHRYSLER-PLYMOUTH, INC., Plaintiff-Respondent,

v.

Nick BALDAROTTA, Legal Custodian of Records of the Wisconsin Department of Revenue and Wisconsin Department of Revenue, Defendants-Appellants-Petitioners.

Supreme Court

*No. 89-0985. Argued March 26, 1991.—Decided May 23, 1991.*

(Also reported in 469 N.W.2d 638.)

For the defendants-appellants-petitioners the cause was argued by *Robert W. Larsen,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the petitioner-respondent there was a brief by *Jeffrey A. Kremers, Diane Slomowitz* and *Fox, Carpen-*

*ter, O'Neill & Shannon, S.C.,* Milwaukee and oral argument by *Mr. Kremers.*

WILLIAM A. BABLITCH, J. The issue presented involves Wisconsin's Open Records Law. The question is whether the Department of Revenue must, in essence, reveal the name of an informant who was promised anonymity by field auditors for the Department of Revenue (Department) in exchange for information regarding certain actions by the informant's employer, Mayfair Chrysler-Plymouth, Inc. (Mayfair). The Department seeks review of a court of appeals' decision which affirmed the circuit court's mandamus judgment compelling the Department to permit Mayfair to inspect certain records in the Department's custody relating to the Department's audit of Mayfair's tax returns. The Department denied access to portions of the records on the ground that the records would reveal the name of a confidential informant who had been given a pledge of confidentiality by the Department in exchange for the information. The court of appeals held that the Department's stated reason for the denial was insufficient to overcome the general presumption of access to public records in Wisconsin. We hold that the Department's denial was legally specific. In addition, we hold that the denial was legally sufficient because the harm to the public interest from the disclosure of portions of records which would reveal the identity of a confidential informant who received a pledge of confidentiality outweighs the public interest in disclosing these records. Accordingly, we reverse the decision of the court of appeals.

On January 13, 1988, the plaintiff, Mayfair, submitted a written request to the Department pursuant to sec. 19.35, Stats.,[1] to inspect and copy certain records in the

---

[1] **19.35 Access to records; fees. (1)** RIGHT TO INSPEC-

Department's possession. These records, which had been provided by a former employee of Mayfair, consisted of checks and business records which related to alleged accounting procedures and practices of Mayfair. The Department denied Mayfair's request on the ground that the information was not a "record" as defined in sec. 19.32(2). In response Mayfair initiated this action for mandamus relief, seeking release of the records pursuant to sec. 19.37(1)(a).[2]

TION. (a) Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. The exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

\* \* \*

(4) TIME FOR COMPLIANCE AND PROCEDURES. (a) Each authority, upon request for any record, shall, as soon as practicable and without delay, either fill the request or notify the requester of the authority's determination to deny the request in whole or in part and the reasons therefor.

(b) . . .If an authority denies a written request in whole or in part, the requester shall receive from the authority a written statement of the reasons for denying the written request. Every written denial of a request by an authority shall inform the requester that if the request for the record was made in writing, then the determination is subject to review by mandamus under s. 19.37(1) or upon application to the attorney general or a district attorney.

[2] **Enforcement and penalties. (1)** MANDAMUS. If an authority withholds a record or a part of a record or delays granting access to a record or part of a record after a written request for disclosure is made, the requester may pursue either, or both, of the alternatives under pars. (a) and (b).

(a) The requester may bring an action for mandamus asking a court to order release of the record. The court may permit the parties

The circuit court held a telephone conference between the parties on June 15, 1988, in which the Department agreed to provide Mayfair redacted copies of documents it held relating to Mayfair's business practices. These copies were edited to delete any references which would suggest the identity of the ex-employee informant who provided the information to the Department. This sanitization erased all numeric figures from the documents creating, in effect, blank forms. At this time, the Department also provided the circuit court with unredacted copies of the documents for *in camera* review.

Mayfair then sent a supplemental request to the Department seeking all records, including check stubs, cancelled checks and timecards, and other business records which were received from any source other than Mayfair. The Department denied this request, stating that it could provide no additional information because it had given a "pledge of confidentiality . . . to the informant, [and] the department must continue to deny access to portions of records which may identify the informant."[3]

---

or their attorneys to have access to the requested record under restrictions or protective orders as the court deems appropriate.

[3]The Department's letter of denial provided in full:

On July 6, 1988, I received your letter of July 1, 1988, requesting access to records relating to pending audits of Mayfair Chrysler-Plymouth, Inc. which have been received from sources other than Mayfair.

I am informed that you have already been provided with copies of the types of records which are responsive to your request and are in the possession of the department, except those copies are edited to delete content which would directly or circumstantially identify a confidential informant who provided information to the department. In respect to the pledge of confidentiality given by department

The Department also identified Steven Koritzinsky and Brian Ertmer as the field auditors from the Department who had had contact with the informant. Mayfair deposed Koritzinsky and Ertmer regarding those contacts. At his deposition, Koritzinsky recalled the Department's initial contact with the informant:

> I was working at a taxpayer's office in a room, and he [the informant] walked into the room and first of all asked me if I was a field auditor with the Wisconsin Department of Revenue, and I told him that yes, I was. And he asked me or he told me he had some information, but before he said anything, he wanted to know if it would be given in confidence and if I had the power to give him a pledge of confidentiality.

Koritzinsky also testified as follows:

> Q: Please continue with what happened after he asked you whether you had the authority to give a pledge of confidentiality.
>
> A: I told him that I would give a pledge of confidentiality that would bind the department, and I said that, you know, we discussed, you know, preliminary discussions. He was saying, well, what does this entail, you know, giving me the impression that if I

employes to the informant, the department must continue to deny access to portions of records which may identify the informant.

Enclosed as Exhibit A is a copy of the notes of department employe Brian Ertmer who obtained the records under a pledge of confidentiality. The remainder of the records are business records of Mayfair received from the informant. Exhibits B, C and D are representative of those records. Since the disclosure of virtually any entries on the records would tend to reveal the identity of the informant, all such entries have been deleted. Exhibits B, C and D are representative of the extent to which the department must delete information in honor of its pledge of confidentiality to the informant.

hadn't given the pledge of confidentiality, he would not have given me any information.

Q: Tell me as best you recall the exact words that he used when he first came into the room and after he asked if you were, in fact, a field auditor for the Wisconsin Department of Revenue?

A: I can tell you that it went something like this, that he had some information and that he would not disclose it unless we gave a pledge that we would not disclose his name in any proceedings.

\* \* \* \*

Q: Tell me again what he asked for by way of a pledge of confidentiality?

A: Well, he did not want his name revealed in any way, shape, or form.

Regarding the scope of the pledge, Koritzinsky told the informant that the Department would not disclose who he was or provide documents that would give away his identity.

Ertmer met with the informant after he was assigned the audit of Mayfair. Ertmer told the informant that the information he provided would be kept confidential. The informant was never asked by Ertmer if he would provide the documents without a pledge of confidentiality. Ertmer acknowledged at the deposition that the documents provided by the informant could have been obtained by subpoena of Mayfair's records.

Mayfair then moved for summary judgment seeking release of the records on the ground that the Department's reasons for denying the request were not legally sufficient. The circuit court granted Mayfair's request for summary judgment and writ of mandamus, and

153

awarded damages of $100.00, statutory costs, and reasonable attorney's fees.

The court of appeals affirmed, concluding that "the reasons asserted by the department were insufficient as a matter of law to support the denial of access to the records. . . ." *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta,* 154 Wis. 2d 793, 795, 453 N.W.2d 922 (1990). The court emphasized that the Department had violated Mayfair's " 'absolute right to inspect a public document in the absence of *specifically stated sufficient* reasons to the contrary.' " *Id.* at 802 (quoting *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979)). Judge Gartzke dissented, arguing that because of the Department's law enforcement functions, the Department must be able to protect confidential informers who rely on its pledge of confidentiality.

This case presents two issues. The first issue is whether the Department's denial of access to portions of its records, on the ground that the information would reveal the identity of a confidential informant who provided information to the Department under a pledge of confidentiality, satisfies the standards of legal specificity required by Wisconsin's Open Records Law, secs. 19.31–.39, Stats., and our prior decisions. The second issue, which arises only if the Department's denial was legally specific, is whether the existence of the Department's pledge of confidentiality to the informant was a legally sufficient reason for denying access to records that overcomes the public policy presumption in favor of access to public records.

■

Both of these issues require us to apply Wisconsin's Open Records Law and prior substantive common law principles construing the right to inspect public records to the facts of this case. "The duty of the custodian is to

specify reasons for nondisclosure and the court's role is to decide whether the reasons asserted are sufficient." *Breier,* 89 Wis. 2d at 427. "Whether harm to the public interest from inspection outweighs the public interest in inspection is a question of law." *Id.* This court reviews questions of law independently, without deference to the trial court.

We hold that by stating that the requested records would reveal the identity of a confidential informant who had been given a pledge of confidentiality, the Department stated a legally specific reason for denying Mayfair's record request. The stated reason of informant confidentiality implies obvious and well-known public policy interests in effective law enforcement that carry sufficient meaning and import for the requester to understand the basis for the denial. We also hold that the denial was legally sufficient because the harm to the public interest from disclosure of portions of records which would reveal an informant's identity outweighs the public interest in disclosing these records.

██ The Wisconsin Open Records Law reflects the common law principles favoring access to public records that have long been recognized in Wisconsin. The strong public policy favoring access is stated in sec. 19.31, Stats.:

> **Declaration of policy.** In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them. Further, providing persons with such information is declared to be an essential function of a representative government

and an integral part of the routine duties of officers and employes whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

The right to inspect records is not, of course, absolute. In some instances, the custodian should deny access to public records because the harm to the public interest from inspection outweighs the public interest in inspection. *Breier,* 89 Wis. 2d at 427; *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 681, 137 N.W.2d 470 (1965). Access should also be denied where there is a clear statutory exception or an existing common law limitation to the general presumption favoring the right of inspection of public records. *Breier,* 89 Wis. 2d at 426; *Hathaway v. Green Bay School Dist.,* 116 Wis. 2d 388, 395–96, 342 N.W.2d 682 (1984). The existence of a statutory exception or common law limitation indicates that the legislature or this court has predetermined that the harm to the public interest from inspection outweighs the benefits. "Thus, the general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential." *Hathaway,* 116 Wis. 2d at 397.

In addition to the substantive standards which protect the public's interest in having access to public records, this court has imposed procedural standards for custodians to follow when considering a public records

156

request to preserve the integrity of the public records law. When a demand to inspect public records is made, the custodian must weigh the competing interests involved and determine whether permitting inspection would result in harm to the public interest that outweighs the recognized public interest in inspecting public records. *Breier,* 89 Wis. 2d at 427. If the custodian determines that the records request should be denied, then he must state the specific policy reasons that he relied on to make that determination. *Breier,* 89 Wis. 2d at 927; *Youmans,* 28 Wis. 2d at 682. In addition, sec. 19.35(4)(b), Stats., requires that "[i]f an authority denies a written request in whole or in part, the requester shall receive from the authority a written statement of the reasons for denying the written request."

██

The court of appeals in *Milwaukee Journal v. Call,* 153 Wis. 2d 313, 317, 450 N.W.2d 515 (Ct. App. 1989), recognized that these procedural and substantive standards established by our prior decisions essentially comprise a two-step procedure for reviewing public records cases:

> First, we must decide if the trial court correctly assessed whether the custodian's denial of access was made with the requisite specificity. Second, we determine whether the stated reasons are sufficient to permit withholding, itself a two-step analysis. Here, our inquiry is: (1) did the trial court make a factual determination supported by the record of whether the documents implicate the public interests in secrecy asserted by the custodians and, if so, (2) do the countervailing interests outweigh the public interest in release. (Citations omitted.)

We adopt this framework for analyzing the question of whether a custodian's denial of access can be sustained by the reviewing court.

Under the *Call* test, the threshold issue is whether the custodian has stated legally specific reasons for denying the records request. Because the development of the specificity requirement in our prior decisions is important to understanding its purpose and application, we first discuss several of the cases in which we have addressed this standard.

We established in *Youmans,* 28 Wis. 2d at 682, that any denial of a public records request must "state specifically the reasons for this denial." The request in *Youmans* was for reports concerning an investigation into alleged police misconduct that had been compiled by the Waukesha City Attorney for the mayor of Waukesha. The request was denied on the grounds that the reports were attorney work product and that their disclosure "would be harmful to the public interest." *Id.* at 683. We concluded that there was no authority to support the work product theory and that the stated justification that disclosure would be harmful to the public interest was the equivalent of offering no reason at all for denying the request. *Id.* at 683–84. Because no prior Wisconsin case had required the reasons for denial to be specially stated, we remanded the case to allow the defendant to advance more specific reasons for denying the request. *Id.* at 685a.

Our first opportunity to apply the standards established in *Youmans,* was in *Beckon v. Emery,* 36 Wis. 2d 510, 513–14, 153 N.W.2d 501 (1967), in which a police chief refused to produce requested police reports on the grounds that the reports were "confidential" and that access to them "would not be in the public interest." We held that this denial did not provide specific reasons for

denying inspection and that the stated justifications were no more than legal conclusions. In addition, we emphasized the following factors:

> In the instant case the failure of the custodial officer to state with specificity his reasons for withholding public records made it impossible for the courts to make the contemplated review. No doubt a number of plausible and perhaps valid reasons for withholding these documents could have been specified and, if so specified, the trial court might after the determination outlined in *Youmans* have upheld the police chief's determination. But no reason was given, and from the record it is obvious that no attempt was made by the chief of police or his representatives to comply with *Youmans* and its rationale. *Id.* at 518.

Thus, *Beckon* stressed that specific policy reasons are necessary to provide a basis for the courts to review the denial and to ensure that the custodian does not arbitrarily reject requests without applying the substantive standards established by this court. Because no specific reasons were given for denying inspection in *Beckon,* we granted the writ of mandamus compelling the production of the reports. *Id.*

The final case we consider is *Breier,* 89 Wis. 2d at 421, in which the police chief refused to disclose to the press and the public the charges upon which suspects were arrested on the grounds that disclosure may cause "personal and economic harm" to the individual's arrested. We stated that to deny a request for inspection the custodian "must state specific public-policy reasons for the refusal." *Id.* at 427. We also emphasized that:

> It is not the trial court's or this court's role to hypothesize reasons or to consider reasons for not allowing inspection which were not asserted by the

custodian. If the custodian gives no reasons or gives insufficient reasons for withholding a public record, a writ of mandamus compelling the production of the records must issue. *Id.*

We concluded that the police chief had stated specific public-policy reasons by asserting his concern for the personal and economic welfare of arrested suspects if the fact of the arrest became known to others. We construed this reasoning as implicating a concern for the reputation of arrested citizens, which we held was a legitimate public-policy interest. *Id.* at 429. We held, however, that while the denial was legally specific, the writ of mandamus should be granted because "as a matter of iaw . . . the harm to the public interest in the form of possible damage to arrested persons' reputations does not outweigh the public interest in allowing inspection of the police records which show the charges upon which arrests were made." *Id.* at 440.

These three cases demonstrate the two primary reasons for requiring the custodian's denial of a records request to state specific policy reasons. First, the specificity requirement provides a means of restraining custodians from arbitrarily denying access to public records without weighing whether the harm to the public interest from inspection outweighs the public interest in inspection. Second, specific policy reasons are necessary to provide the requester with sufficient notice of the grounds for denial to enable him to prepare a challenge to the withholding and to provide a basis for review in the event of a court action. The specificity requirement is, therefore, procedural in nature. The focus at this stage is not on whether the custodian was correct in denying the inspection request; it is on whether the cus-

160

todian has fulfilled his obligation to the public to provide a meaningful and reviewable response to the request.

Mayfair asserts that the Department's denial, which relied solely on the pledge of confidentiality given to its informant, failed to state any "specific public policy reasons" as required by *Breier* and should be rejected on that basis. Mayfair argues that although the Department has asserted that a denial based on informant confidentiality implies a public interest in efficient and effective law enforcement, these reasons cannot be considered by this court under *Breier* because the Department never made reference to law enforcement interests in its denial and the Department was not acting as a law enforcement agency. In addition, Mayfair argues that the Department's sole reliance upon informant confidentiality is as unspecific as the reasons rejected by this court in *Beckon.* Mayfair asserts that, as in *Beckon,* the written denial in the present case was not sufficiently specific because it did not provide any foundation from which to evaluate the substantive merits of the Department's denial. We disagree.

We conclude that the Department's stated reason for denying Mayfair's request was sufficiently specific because it satisfied the purposes of the specificity requirement. Unlike the "reasons" stated in *Youmans* and *Beckon,* the Department's denial provided Mayfair with sufficient notice of the basis for the denial. By stating that the request was being denied because a pledge of confidentiality has been given to an informant who provided information to the Department, the Department made it known that its decision was controlled by the obvious and well-known public interest in effective law enforcement that is served by providing informants with confidentiality.

Contrary to Mayfair's assertion, the reason for denying the request in this case was in no way analogous to the police chief's reasons in *Beckon* that the report was "confidential" and its release "would be contrary to the public interest." The reasons stated in *Beckon* were legal conclusions that provided no inkling of what facts were being relied on to deny the request or of the type of public interest implicated by the records request. By contrast, the Department's reason for denying the request in this case informed Mayfair that the records were not accessible because they would reveal the name of a confidential informant who had received a pledge of confidentiality. Thus, the denial apprised Mayfair of the underlying facts affecting the Department's decision and focused Mayfair's attention on whether the public interest in maintaining the confidentiality of informants outweighed that of access to public records.

Under these circumstances, we cannot say that the Department arbitrarily denied the records request or failed to provide sufficient notice of the basis for the denial to enable Mayfair to choose a course of action. The denial identified that there was a pending audit of Mayfair, informed Mayfair of the type of records involved, explained that the information was deleted solely out of concern for maintaining pledges of confidentiality to informants, and identified the Department employees who dealt with the informant. The denial stated a legitimate policy interest in maintaining pledges of confidentiality to informants. This information was more than sufficient to permit Mayfair to make an informed decision whether to challenge the denial and to provide a basis for the court to review the sufficiency of

the denial.[4]

Moreover, Mayfair's strict interpretation of *Breier*'s requirement that public policy reasons must be specifically stated in the denial ignores the purpose of the specificity requirement. Where the public policy reasons behind the stated reason for the denial are obvious and well-known, as in this case, we will not refuse to consider the merits of the denial. And while, as we said in *Breier*, we will not "hypothesize" reasons why disclosure would be harmful to the public interest or consider additional reasons not asserted in the denial, such hypothesizing is unnecessary in a case such as this where the arguments supporting the reason for the denial are obvious to all. The stated reasons for the denial must be specific, but they need not state the obvious.

Because the Department's custodian cited reasons that carried sufficient meaning and import to allow Mayfair to understand the basis for the denial, we conclude that the merits of the Department's denial should be considered. We refuse to exalt form over substance when the basic purposes of the specificity requirement

---

[4]Furthermore we note that although the court of appeals has not directly addressed the question of whether informant confidentiality alone is a sufficiently specific reason for denying access to records, it has strongly suggested that informant confidentiality is a sufficiently specific reason for denying a request. *See Call*, 153 Wis. 2d at 318. ("Prejudice to an ongoing criminal investigation, crime detection and informant confidentiality are all specific public policy reasons for confidentiality that meet the specificity requirement."); *Journal/Sentinel, Inc. v. Aagerup*, 145 Wis. 2d 818, 826, 429 N.W.2d 779 (Ct. App. 1988) (indicating that there was an overriding public interest in preserving secrecy when information might reveal an informer's identity).

have been met. Accordingly, we hold that the Department's denial in this case was sufficiently specific.

The second issue is whether the existence of the Department's pledge of confidentiality to the informant was a legally sufficient reason for denying access to the records that overcomes the public policy presumption in favor of access to public records. The *Call* test provides a two-step analysis for making this determination. The reviewing court must first determine whether the circuit court made a factual determination supported by the record of whether the documents implicate the public interests in confidentiality asserted by the custodian. The reviewing court must also determine whether the countervailing interests in confidentiality outweigh the public interest in release.

We first address the question of whether the circuit court made a determination supported by the record regarding whether the public policy interest in informant confidentiality asserted by the custodian in this case is in fact implicated by the records withheld by the Department. Our review of the withheld documents confirms the circuit court's implicit finding that their release would divulge the name of the confidential informant who provided the records. The informant's name could easily be determined through the information contained on the checks, earnings statements, time cards, etc. that the Department obtained from the informant and withheld from Mayfair.

We next address the question of whether the asserted interests in preserving the confidentiality of the informer who was given a pledge of confidentiality outweigh the recognized public interest in the release of public records. As we noted above, the question of

164

whether harm to the public interest from inspection outweighs the public interest in inspection is a question of law, which this court reviews independently. *See Breier,* 89 Wis. 2d at 427.

The Department contends that no balancing of interests is necessary in this case because this court established in *Stelloh v. Liban,* 21 Wis. 2d 119, 124 N.W.2d 101 (1963), that, as a matter of law, the government has a privilege to provide confidentiality to informants in both civil and criminal contexts. The Department argues that *Stelloh* created a common law limitation applicable to public records requests that controls the outcome of this case. We do not agree that the government has such a blank check.

In *Stelloh,* 21 Wis. 2d at 119, which involved a civil action against police for false arrest, we held that the police had a privilege to withhold the identity of a confidential informant whose information the police relied upon to justify their arrest of the plaintiff. We based our decision on the need to encourage citizen participation in law enforcement:

> The plaintiff admits, as well he must, that there exists a privilege based on public policy on behalf of the government not to disclose the names of the informers. This is a general rule in criminal cases. 8 Wigmore, *Evidence* (McNaughton rev.), p. 761, sec. 2374; see also Anno. 76 A.L.R. (2d) 262. The basis for the privilege is grounded upon the duty of every citizen to aid in the enforcement of the law. To encourage such citizen participation in law enforcement, it is essential the informer's identity not be disclosed. Regardless of the informer's motive, he is entitled to protection for 'himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution

165

actions against him.' Wigmore, Evidence, *supra,* page 762. *Id.* at 125.

We further stated in *Stelloh,* 21 Wis. 2d at 127, that "the privilege of nondisclosure of identity applies to a civil suit for the same reason it exists in a criminal action."

The public policy interest in informant confidentiality is also reflected in sec. 905.10(1), Stats.,[5] which provides the government with a privilege to refuse to disclose the identity of an informant who has furnished investigative information to a law enforcement officer or member of a legislative committee or its staff. The Federal Advisory Committee's Note to Fed. R. Evid. 510, on which sec. 905.10, is based, states that "[a]lthough the tradition of protecting the identity of informers has evolved in an essentially criminal setting, noncriminal law enforcement situations involving possibilities of reprisal against informers fall within the purview of the considerations out of which the privilege originated." *See* 59 Wis. 2d R 146 (1974).

We do not agree with the Department that there is an established common law limitation that permits any government agency to withhold public records based on the fact that a pledge of confidentiality has been given to a confidential informant for the purpose of obtaining information. *Stelloh* only contemplated the use of informants by law enforcement officers, as does sec. 905.10, Stats. Moreover, *Stelloh* was not a public records request that required the countervailing interests in secrecy and disclosure to be weighed against each other.

---

[5] **905.10 Identity of informer. (1)** RULE OF PRIVILEGE. The federal government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

Nevertheless, we are persuaded, for the same policy reasons that controlled our decision in *Stelloh,* that government agencies that are engaged in a law enforcement function may refuse to disclose portions of records that would reveal the names of confidential informants who have been given a valid pledge of confidentiality. The confidential informant enhances law enforcement efforts by providing information about criminal and noncriminal law violations that often cannot be obtained through conventional investigation methods. The efficiency of law enforcement efforts is served by focusing the attention of investigators upon suspected offenders. The informant may also be in a position to provide evidence and insight into the alleged violations. As *Stelloh* emphasizes, however, all these advantages to efficient and effective law enforcement would be lost if informants were not adequately protected from the stigma and potential harm of public disclosure of their identities. For this reason, we hold as a matter of law that where criminal or noncriminal law enforcement interests are at stake, the need to maintain the integrity of the government's pledges of confidentiality to informants may on balance outweigh the public's interest in having access to portions of records that could identify a confidential informant.[6]

---

[6]This holding is not dependent on the government agency establishing that the informant would suffer adverse consequences from disclosure of his identity. If the informant has received a pledge of confidentiality in exchange for information, the agreement should not be broken on the basis of the circuit court's view that the informant did not need to seek the pledge of confidentiality for which he bargained. In the present case, the potential adverse consequences to the informant from disclosure are unknown, but, as Judge Gartzke noted in his dissent, "[t]he

We therefore turn to the ultimate question: does the Department's pledge of confidentiality in this case outweigh the public's interest in having access to what would otherwise be public records? Mayfair vigorously challenges the Department's use of the pledge, echoing the view expressed by the circuit court and the court of appeals that " 'allowing a custodian to hand out pledges of confidentiality freely, with no explanation or showing of necessity, is contrary to the legislative policy objectives of the Open Records Law.' " *Mayfair,* 154 Wis. 2d at 799.

■■■■

Mayfair emphasizes that the Wisconsin Attorney General has repeatedly and consistently ruled that for a pledge of confidentiality to warrant nondisclosure under the Act the pledge must satisfy the following four criteria:

> First, there must have been a clear pledge made. Second, the pledge should have been made in order to obtain the information. Third, the pledge must have been necessary to obtain the information.
> Finally, even if a pledge of confidentiality fulfills these criteria, thus making the record containing the information obtained clearly within the exception, the custodian must still make an additional determination in each instance that the harm to the public interest that would result from permitting inspection outweighs the great public interest in full inspection of public records. 60 Op. Atty. Gen. 284, 289 (1971).

This test has since been reiterated in succeeding Attorney General Opinions. *See* 74 Op. Atty. Gen. 14, 15 (1985); 63 Op. Atty. Gen. 400, 407–08 (1974); 61 Op.

tenacity with which Mayfair seeks that name should give the informer concern."

Atty. Gen. 361, 365 (1972). We conclude that these four criteria serve as an appropriate basis for our review.

Mayfair asserts that none of these factors were met by the Department, contending that the Department agreed to issue the pledge without making any base inquiries as to: the nature of the informant's purported information; whether such information could be obtained through alternate sources; whether any information would in fact be obtainable from the informant absent the issuance of a pledge; the scope of the pledge itself; or the extent to which the public interest would be offended by the issuance of the pledge.

We agree with Mayfair that the attorney general's four-prong test provides a valuable framework for evaluating the validity of a pledge of confidentiality. The circuit court applied this test and determined that while the Department had satisfied the first two prongs of the test, they had not satisfied the third and fourth prongs. We agree with the circuit court with respect to the first two factors. We conclude that the circuit court did not apply the proper standard with respect to the third and fourth prongs of the test. We find that the Department satisfied the four factors necessary to establish a valid pledge of confidentiality.

The first three factors of the test are established by Steven Koritzinsky's testimony indicating that he told the informant that he would give him a pledge of confidentiality after the informant had first informed Koritzinsky that he would not provide information if it could not be given in confidence.

The circuit court and the court of appeals erroneously determined that the third factor, which requires that the pledge was necessary to obtain the information, was not met because Mayfair's records could have been obtained by subpoena rather than directly from the

169

informer. The lower courts' interpretation of this factor ignores the distinct probability that no information at all would have been obtained from the informant if the Department had not met his initial request for confidentiality. The only reason the Department knew who to look at, what records to look at, and what to look for is because the informant told them. The Department's subpoena authority would have been useless if the informant never told them who or what he suspected. The Department would never have known that the target was Mayfair, much less what to look for at Mayfair. The evidence provided by the informant gave the Department a basis for determining whether the informant's allegation was of any merit and targeted Mayfair and the specific files of Mayfair's that needed to be examined by the Department's auditors. In addition, if Mayfair had not provided complete records to the Department, the informant's documents may also have served to alert the Department of that fact. Based on the above, we conclude that the circuit court was in error in determining that the third factor was not met.

The fourth prong of the test, requiring the custodian to make an additional determination in each instance that the harm to the public interest that would result from permitting inspection outweighs the great public interest in full inspection, is likewise met. Mayfair argues that the Department never conducted the weighing required by the fourth prong of the test. We disagree.

The record reveals that the informant emphasized to the Department's auditor, Steven Koritzinsky, that he would not give any information to the Department if his name would be revealed in "any way, shape, or form." Implicit in the Department's refusal to permit full inspection of the records because of its pledge of confi-

dentiality is the obvious and well recognized public interest in effective law enforcement that is served by providing informants with confidentiality and maintaining that confidentiality. Anonymous sources at times provide the only source for valuable information. Although the public may be well served by knowing the name of the informant in any particular case, the public in many instances is better served by obtaining the information from an informant at the expense of not learning the informant's identity. Much valuable information could be lost to law enforcement if it became known to potential informants that promises of confidentiality were meaningless. That is the obvious judgment made by the Department in this case, and we will not reverse it. There may be cases in which the overriding public interest in inspection compels disclosure, but this is not such a case.

We conclude that the Department's denial of Mayfair's record request satisfied the requirements of Wisconsin's Open Records Law because it was legally specific and legally sufficient. By informing Mayfair that their request was being denied because a pledge of confidentiality had been given to a confidential informant who had provided the records, the Department adequately communicated that the denial was based on the obvious and well-known law enforcement interests served by confidential informants. Thus, the Department satisfied its obligation to Mayfair to not arbitrarily deny the request without providing reasons specific enough for Mayfair to understand the basis for the denial. The denial was legally sufficient because the harm to the public interest in effective law enforcement from disclosing portions of records that could reveal the identity of a confidential informant outweighs the public

171

interest in inspection of those records. We also conclude it is in the public interest to permit the Department to provide pledges of confidentiality to citizens who may not otherwise step forward to assist law enforcement efforts. Therefore, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.